KURT VAN ENGEL COMMISSION CO., INC., a Wisconsin corporation, Plaintiff-Respondent,†

v.

Ann Jennaro ZINGALE, Defendant-Appellant.

Court of Appeals

*No. 04–1900. Oral argument March 01, 2005.—Decided March 22, 2005.*

2005 WI App 82

(Also reported in 696 N.W.2d 280.)

† Petition to review denied 7-28-2005.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David B. Halling* and *Christopher T. Kolb* of *Halling & Cayo, S.C.* of Milwaukee. There was oral argument by *Christopher T. Kolb.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph A. Ranney* of *DeWitt Ross & Stevens, S.C.* of Madison and *Howard B. Schoenfeld* of *DeWitt Ross & Stevens, S.C.* of Brookfield. There was oral argument by *Joseph A. Ranney.*

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. Ann Jennaro Zingale ("Jennaro Zingale") appeals from a judgment in favor of Kurt Van Engel Commission Co., Inc., ("Van Engel"). The trial court granted summary judgment in Van Engel's favor after concluding that Van Engel was entitled to collect on a promissory note executed by Jennaro Zingale's late husband, Anthony J. Zingale ("Zingale"), in 1980. Jennaro Zingale argues that the action is barred by the

applicable statute of limitations and laches. She also argues that the trial court misapplied the Wisconsin Marital Property Act in reaching its decision.

¶ 2. We conclude that Van Engel's claim is barred by the statute of limitations. Specifically, we conclude that: (1) the Collateral Pledge Agreement executed on August 15, 1995, did not begin a new six-year statute of limitations period on the note; and (2) even if the Collateral Pledge Agreement began a new six-year statute of limitations period, that period of time expired on August 15, 2001, and was not extended by WIS. STAT. § 893.43 (2003–04).[1] For these reasons, we reverse the judgment and remand with directions that the trial court enter judgment in Jennaro Zingale's favor, dismissing the complaint against her.[2]

## BACKGROUND

¶ 3. Kurt Van Engel and Anthony Zingale worked together at Kurt Van Engel Commission Co., Inc., apparently for many years. Zingale owned stock in the company. On October 24, 1980, Zingale signed a document, which appears to be on a Midland National Bank form. That document is described by the parties, and on the face of the document, as a "note" (hereafter, the "Note"). The Note reads in relevant part:

THE UNDERSIGNED JOINTLY AND SEVERALLY PROMISE TO PAY TO THE ORDER OF Kurt Van

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Because we conclude that the action is barred by the statute of limitations, we do not address Jennaro Zingale's defenses with respect to laches and the Marital Property Act. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

Engel Commission Co., Inc . . . Ninety six thousand one hundred fourty [sic] one and 90/100 ($96,141.90) DOLLARS WITH INTEREST AT THE RATE OF six (6%) PERCENT PER ANNUM AFTER October 24, 1980 PAYABLE October 24, 1985.

All interest charged herein shall be computed daily on the basis of 1/360th of the annual rate(s) stated, provided, however, that such charges shall at no time exceed that permitted by law . . . .

All makers, endorsers, sureties and guarantors hereon agree to pay on demand all costs of collection, including reasonable attorney's fees incurred by the holder hereof in enforcing this note on default.

All makers, endorsers, sureties and guarantors hereon hereby consent to the holder hereof commencing action on this note at any time after maturity in any court in the State of Wisconsin and agree to be bound by the jurisdiction of such court.

All makers, endorsers, sureties and guarantors hereof waive presentment, protest, demand and notice of dishonor and agree that, without affecting the liability of any of them, the holder may, without notice, renew or extend the time for payment, accept partial payments, release or impair any collateral security for the payment of this note or agree not to sue any party liable on it. If any payment is not made when due the unpaid balance shall, at the option of the holder and without notice, mature and become immediately payable.

¶ 4. Only "Anthony J. Zingale" signed the Note on October 24, 1980. Jennaro Zingale never signed the Note; indeed, the record indicates that she never even saw the Note until this litigation began. The Note contains a specific promise to pay the principal with interest and includes language binding "endorsers,

780

sureties and guarantors" (of which there were none). It also specifically provides that if any payment is not made when due, then at the option of Van Engel the entire unpaid balance would be immediately due. However, it contains no language making the Note binding on Zingale's heirs, and no pledge of any collateral as security for the debt.

¶ 5. No payments were made on the Note either before or after its due date of October 24, 1985. All parties agree that under Wis. Stat. § 893.43,[3] the six-year statute of limitations for collection on the Note began to run when the Note became due on October 24, 1985, and was due to expire six years later on October 24, 1991, unless the time was otherwise tolled or extended. On March 15, 1989, Van Engel started suit to collect on that Note; this commencement of litigation tolled the statute for the duration of the litigation. *See* Wis. Stat. § 893.13(2).[4]

¶ 6. For reasons that were not explained in the record or during oral argument, the litigation between Van Engel and Zingale languished for more than six

---

[3] WISCONSIN STAT. § 893.43 provides:

**Action on contract.** An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.

[4] WISCONSIN STAT. § 893.13 provides in relevant part:

**Tolling of statutes of limitation** . . . .

(2) A law limiting the time for commencement of an action is tolled by the commencement of the action to enforce the cause of action to which the period of limitation applies. The law limiting the time for commencement of the action is tolled for the period from the commencement of the action until the final disposition of the action.

years. That case was settled on August 15, 1995, when two events happened. First, the case was dismissed by agreement "without prejudice," meaning that Van Engel could have sued Zingale to collect on the Note during the time remaining in the statute of limitations, which was due to expire in March 1998.[5] Second, Zingale and Van Engel both signed a document entitled "Collateral Pledge Agreement" (hereafter, the "Pledge Agreement").

¶ 7. The Pledge Agreement incorporated by reference two specific sections of the 1995–1996 Wisconsin Statutes, which described the rights and obligations of parties who held investment securities (*i.e.*, stock) as a part of the security in a secured transaction. The Pledge Agreement indicated that Zingale delivered certain shares of specifically identified stock to Van Engel. It also acknowledged that Van Engel acquired certain new rights under the Pledge Agreement to receive the benefits of the stock and to liquidate the stock on the occurrence of specific conditions.

¶ 8. Zingale died on October 4, 1999, never having made any payments on the Note. No petition for administration of his estate was filed by his widow, Jennaro Zingale. Thus, Van Engel filed the petition in August 2002, as a creditor is permitted to do under Wis. Stat. § 856.07(2). On September 25, 2002, Van Engel brought this action against Jennaro Zingale to recover on the Note. The trial court granted Van Engel's motion for summary judgment, awarding Van Engel the full value of the Note, plus interest. This appeal followed.

---

[5] At least one party referred to this date as March 1999. This court's calculation reflects that when one subtracts the time spent in litigation, the statute of limitations on the Note ran in March 1998. Even if the date was March 1999, the result is the same.

## DISCUSSION

¶ 9. It is undisputed that the applicable statute of limitations for suit to enforce the original Note, after tolling relevant to this case, expired in March 1998. Unless new life was breathed into the Note, the debt the Note represents has been extinguished. The parties disagree as to whether, by entering into the Pledge Agreement on August 15, 1995, Zingale entered into a new promise to pay the original Note so that by operation of law, a new statute of limitations period began to run on the Note on that date. We conclude that no new period began to run. Furthermore, we conclude that even if the Pledge Agreement did create a new six-year period of time on which to collect on the Note, that time expired prior to the commencement of this action.

### I. The Pledge Agreement

¶ 10. Van Engel reads the Pledge Agreement as a new promise to pay the original Note, which would thereby provide a new six-year statute of limitations period beginning August 15, 1995. We disagree that the Pledge Agreement contains such a promise.

¶ 11. It has long been the law in this state that an extinguished debt does not come back to life by a mere acknowledgement of the existence and unpaid nature of the debt. Nor is a promise to pay the debt when one is able to do so sufficient to reinstate the extinguished debt. The supreme court in *Pierce v. Seymour*, 52 Wis. 272, 9 N.W. 71 (1881), had occasion to discuss these issues at length. That decision has not been overruled, nor modified by later courts. In *Pierce*, the plaintiff sued on a note for which the six-year statute of limita-

tions had expired. *Id.* at 273. After the expiration, the debtor wrote a long letter to his friend and creditor in which he made the following statements:

> I owe you some letters and some money . . . . I do think I see my way clear to pay you the $200 and interest I owe you; but . . . I have never seen a day or an hour that I have been out of the reach of a creditor's goad . . . .
>
> You are mistaken about my *present* resources. Many legal restrictions are thrown around what may ultimately be a substantial benefit . . . . Still, I am in hopes another two years will enable me, from my present official income, to clear off all pressing debts . . . . Rest assured that not a day of pecuniary freedom will pass over my head without you hearing from me . . . .

*Id.* at 275–76.

¶ 12. The court in 1881 described the then-established law with respect to statutes of limitations in the following terms:

> (1) That when the statute of limitations has run against a debt in favor of the party owing the same, the debt is extinguished; (2) that no mere admission of a legal liability is sufficient to remove the bar of the statute,–to effect that there must not only be an acknowledgment of the debt or obligation, but an unqualified promise to pay the same, and such promise must be in writing, signed by the party making it.

*Id.* at 276. *Pierce* observed that in *Pritchard v. Howell,* 1 Wis. 118 [131] (1853), the supreme court had held that "in order to take a case out of the statute of limitations on the ground of a new promise, there must be an admission of the debt or obligation, and an unqualified promise to pay the debt or perform the contract, made within the time limited by the statute."

*Pierce*, 52 Wis. at 277. *Pierce* then concluded that although the letter in question acknowledged the debt, it did not contain an unqualified promise to pay the debt. *Id.* at 279. The court observed:

> The letter relied on undoubtedly acknowledges this indebtedness of the defendant, but studiously avoids making any promise of payment .... This letter was undoubtedly intended to give the plaintiff hope that at some time he might expect to realize something on his long-standing claim, but it seems to come far short of being such an unqualified promise to pay the note with interest as the law requires. At best, it was a promise subject to many contingencies and conditions, none of which were proved to have occurred before the action was brought ....

*Id.* at 279–80.

¶ 13. Applying these principles here, it is clear that the Pledge Agreement does not contain a new promise to pay that satisfy the requirements outlined in *Pierce*. Although it is undisputed that the Pledge Agreement contains an admission of the debt or obligation, we conclude that it does not contain an unqualified promise to pay the debt or perform the contract. The document is unambiguous. We may not "interpret" the Pledge Agreement to include terms not plainly stated. *See Farm Credit Servs. v. Wysocki*, 2001 WI 51, ¶ 12, 243 Wis. 2d 305, 627 N.W.2d 444 (when contract language is unambiguous, the court applies its literal meaning).

¶ 14. Because the language of the Pledge Agreement is determinative of whether it contains a new and unqualified promise to pay the Note, the Pledge Agreement is set forth here in considerable detail. Each paragraph, and the document as a whole, is analyzed to

determine whether the specific language of the Pledge Agreement constitutes a new and unqualified promise to pay the original Note.

¶ 15. The introductory paragraph dates the Pledge Agreement as commencing on August 15, 1995, between Anthony Zingale, who is described as the "Pledgor" and Kurt H. Van Engel Commission Co., Inc., which is identified as the "Pledgee."[6] This paragraph does not contain any new promise to pay the Note. It does not even mention the Note.

¶ 16. Identification of the parties to the Pledge Agreement is followed by certain recitals that describe the general rights exchanged. These recitals are:

> At the time of the execution of this Agreement, [Zingale] was indebted to [Van Engel] in the sum of $96,141.90, plus interest, evidenced by the promissory note of [Zingale] dated October 24, 1980 for this amount.
>
> To induce [Van Engel] to cease collection efforts on the promissory note, [Zingale] has agreed to pledge certain stock with [Van Engel] as security for repayment of the loan and to execute an irrevocable proxy for the voting rights as long as this Agreement remains in effect.

This part of the Pledge Agreement does not contain a new and unqualified promise to pay the Note. It merely acknowledges the existence of the Note, and that it is not paid. Although such a promise could have easily and logically been inserted here had the parties agreed to do so, no new promise to pay the Note is included. Instead, there follow twelve paragraphs of terms and conditions,

---

[6] To avoid confusion hereafter, "Zingale" is substituted for "Pledgor" and "Van Engel" is substituted for "Pledgee" in the text of the Pledge Agreement.

all specific as to the rights and duties of the parties with respect to the collateral involved in the Pledge Agreement. No paragraph contains a new and unqualified promise to pay the Note. Each paragraph is set forth below and discussed separately.

¶ 17. Paragraph 1 of the Pledge Agreement states:

> **Pledge of Collateral.** In consideration of any financial accommodation given, to be given or continued by [Van Engel] to [Zingale], and as collateral security for the payment of all debts, obligations or liabilities now or hereafter existing, stemming from the promissory note dated October 24, 1980, pursuant to Wis. Stat. § 409.203 and § 408.321, [Zingale] hereby grants to [Van Engel] a security interest in instruments of the following description: 100 common shares of Palmisano & Baake, Inc. represented by Certificate No. 7, duly endorsed in blank and this date delivered to and deposited with [] Kurt H. Van Engel. [Zingale] hereby grants [Van Engel] a further security interest in any stock rights . . . stock dividends . . . or other property to which [Zingale] is or may hereafter become entitled to receive on account of the property originally delivered hereunder. In the event that [Zingale] receives additional property of such nature, [Zingale] shall immediately deliver the property to [Van Engel] to be held by [Van Engel] in the same manner as the property originally delivered hereunder. All property so delivered to [Van Engel] under this paragraph is referred to as collateral.

This paragraph does not contain any new and unqualified promise to pay the Note. The paragraph acknowledges the existence of a prior debt, but it makes no promise to pay it and does not identify the amount of interest or how it is to be calculated. This paragraph merely creates a security interest for Van Engel in the

787

described stock for all debts now, *or hereafter,* existing which stem from the Note. Recognizing that further debts may "stem" from the prior Note is hardly an unqualified promise to pay the Note.

¶ 18. Paragraph 1 acknowledges that in exchange for past, present or future "financial accommodations" by Van Engel, in order to secure payment of debt "now or hereafter existing," Zingale is delivering one hundred shares of Palmisano & Baake stock to Van Engel and is also giving him the right to receive any and all benefits of that stock while the Pledge Agreement is in effect. Zingale promises only that he will immediately deliver to Van Engel any property he receives that is related to the Palmisano & Baake stock, and that additional property will be treated as collateral under the Pledge Agreement.

¶ 19. The Pledge Agreement here specifically re-fers to two sections of what was then part of the Wisconsin Uniform Commercial Code dealing with se-cured transactions, and the rights that the Pledgee (the person receiving the pledged property) had with respect to that property. WISCONSIN STAT. § 408.321 (1995–96) was part of a chapter of the Wisconsin Statutes dealing with investment securities. It described the general rules for enforceability, attachment, perfection and ter-mination of security interests in stocks and similar investment securities. That chapter was repealed and recreated in 1997. *See* 1997 Wis. Act 297, § 8. Section 408.321 did not remain as an identifiable separate section, but many of the relevant provisions are now found in WIS. STAT. ch. 409, which deals generally with secured transactions. WISCONSIN STAT. § 409.203 sets out more particularly the formal requisites for attachment and enforceability of security interests and interests in proceeds of liquidated collateral. In essence, the parties

agreed to and memorialized very specific rights regarding the pledged stock, but made no mention of a new and unqualified promise by Zingale to pay the original Note.

¶ 20. Paragraph 2 of the Pledge Agreement states:

> **Representations.** [Zingale] warrants and represents that he is the owner of the pledged shares, there are no restrictions upon the transfer of any of the pledged shares, other than may appear on the face of the certificates, and [Zingale] has the right to pledge and transfer such shares free of any encumbrances and without obtaining the consent of the other shareholders.

This paragraph does not contain any new and unqualified promise to pay the Note. This is Zingale's specific representation that he has the right to pledge the shares he is pledging. This paragraph is the basis upon which Zingale may become newly indebted to Van Engel under Paragraphs 3 and 4 if it is necessary for Van Engel to defend his (Van Engel's) right to possession and/or liquidation of the collateral.

¶ 21. Paragraphs 3 and 4 of the Pledge Agreement state:

> **Covenants of [Zingale].** For the period commencing upon the effective date of this Agreement and continuing until its termination:
>
> A. [Zingale] shall keep the collateral free from all liens . . . pay and discharge, when due all taxes, levies and other charges upon it, and defend it against all claims and legal proceedings by persons other than [Van Engel].
>
> B. [Zingale] shall pay all expenses and, upon re-

789

quest, take any action reasonably deemed advisable by [Van Engel] to preserve the collateral . . . and/or enforce [Van Engel]'s interest therein or rights under this Agreement.

**Advances and Expenses.** All advances, charges, costs and expenses, including reasonably [sic] attorneys fees, incurred or paid by [Van Engel] in exercising any right, power or remedy conferred on [Van Engel] by this security agreement, or in the enforcement thereof, shall become a part of indebtedness secured hereunder and shall be paid to [Van Engel] by [Zingale] immediately and without demand with interest at six percent (6%) per annum.

These paragraphs do not contain a new and unqualified promise to pay the Note. BLACK's LAW DICTIONARY 391 (8th ed. 2004) defines a covenant as "[a] formal agreement or promise . . . ." Paragraph 3 contains the significant promises made by Zingale to Van Engel in the Pledge Agreement. These include a promise to keep the collateral free of other liens or claims, and to pay all of Van Engel's expenses if Van Engel has to take any action to enforce his rights under the Pledge Agreement. In that way, when read in conjunction with Paragraph 4, Zingale can become additionally indebted to Van Engel if Van Engel has to advance the money to protect the collateral. This indebtedness is referred to later in the context of the rights of various parties under the Pledge Agreement.

¶ 22. Paragraph 5 of the Pledge Agreement states:

**Return of Collateral.** [Van Engel] may at any time deliver collateral or any part of it to [Zingale]. The receipt of [Zingale] shall be a complete and full discharge of [Van Engel] of the collateral so delivered, and [Van Engel] shall thereafter be discharged from any liability or responsibility therefor.

This paragraph does not contain a new and unqualified promise to pay the Note. This paragraph must be read in the context of the complicated rights and responsibilities that Wis. Stat. § 408.321 (1995–96) grants to the person holding the pledged investment security. Perhaps anticipating an uncertain market, and a wish by Van Engel to avoid the vicissitudes of that market, the parties agreed that Van Engel could simply return the collateral and be absolved from any further obligation to behave in the commercially reasonable manner generally imposed by the cited provisions of the Wisconsin Statutes. However, Van Engel acquired rights to act on the collateral if he chose to do so.

¶ 23.　Paragraph 6 of the Pledge Agreement states:

> **Notice.** [Van Engel] shall be under no duty . . . to make or give any presentments, demands for performance, notices of nonperformance, protests, notices of protest or notices of dishonor in connection with any obligations or evidences of indebtedness held by [Van Engel] as collateral, or in connection with any obligations or evidences of indebtedness that constituted in whole or in part the indebtedness secured under this pledge.

This paragraph does not contain a new and unqualified promise to pay the Note. The dissent attempts to create a new promise to pay the Note by focusing its attention on the word "indebtedness." However, the fair context of this paragraph is the phrase "evidences of indebtedness," which relate specifically to that which is "held by [Van Engel] as collateral." This paragraph releases Van Engel from any duty to go through the otherwise required formal presentation of the debt for payment, demand for payment, notice of nonpayment, and other requisites of the financial world of banks and brokerage

houses in order to collect whatever debt becomes due because of Zingale's failure to keep the collateral lien free.

¶ 24. Paragraph 7 of the Pledge Agreement states:

**Default.** At the option of [Van Engel] . . . all or any part of the indebtedness shall immediately become due and payable, irrespective of any agreed maturity, on the happening of any of the following events:

A. Failure of [Zingale] to keep or perform any of the terms or provisions of this Agreement.

B. Default by [Zingale] in the payment of principal or interest when due.

C. Any deterioration or impairment of collateral or any decline or depreciation in its value or market price, whether actually or reasonably anticipated, that causes collateral in the judgment of [Van Engel] to become unsatisfactory as to character or value.

D. Levy of attachment, execution or other process against [Zingale] or any of the collateral.

E. Death, insolvency, failure in business, general assignment for the benefit of creditors, filing of any petition in bankruptcy . . . by or against [Zingale].

On the happening of any of the foregoing specified events of default, any agreement for further financial accommodations by [Van Engel] shall terminate at its option.

This paragraph does not contain a new and unqualified promise to pay the Note, which had become due and

payable in full on October 24, 1985. All references in Paragraph 7 to "indebtedness" are fully explained and have logical impact in terms of the other provisions of the Pledge Agreement that deal exclusively with the collateral and Van Engel's rights therein. If these terms of default applied to the Note, Zingale was in default of the Pledge Agreement on the day it was signed because he was already well past the date (October 24, 1985) when the entire sum of the Note was due. It defies both logic and common sense, not to mention the plain language of the Pledge Agreement, to read a new promise to pay the Note where none is explicitly stated. Agreement by Zingale here to terms that recognized his existing prior obligation (the Note), in the context of undertaking new obligations under the Pledge Agreement with regard to specific collateral, is nothing more than a repeated acknowledgement of the facts set out in the introduction to the Pledge Agreement.

¶ 25. Paragraphs 8 and 9 of the Pledge Agreement state:

> **Remedies**. On the happening of any default pursuant to Paragraph Seven, [Van Engel] shall have the rights and remedies conferred [to him] . . . under the Wisconsin Uniform Commercial Code or other applicable laws.

> **Waiver by [Van Engel].** Any forbearance, failure or delay by [Van Engel] in exercising any right, power or remedy hereunder shall not be deemed to be a waiver of such right . . . . Every right, power or remedy of [Van Engel] shall continue . . . until . . . specifically waived by an instrument in writing executed by [Van Engel].

These paragraphs do not contain a new and unqualified promise to pay the Note. Paragraph 8 merely reaffirms that Van Engel may have additional remedies under the Wisconsin Statutes, and Paragraph 9 provides a term,

793

common to many commercial agreements, that not exercising rights at one time when they are available is not a waiver of those rights.

¶ 26. Paragraph 10 of the Pledge Agreement states:

> **Effect of Agreement.** This is a continuing security agreement, and all the rights, powers and remedies hereunder shall apply to all past, present and future indebtedness of [Zingale] to [Van Engel], notwithstanding the death, incapacity or bankruptcy of [Zingale] or any other event or proceeding affecting [Zingale]. Until all debtedness is paid in full, all rights, powers and remedies granted to [Van Engel] hereunder shall continue . . . and may be exercised by [Van Engel] at any time, even though the right to recover the indebtedness or any part thereof is barred by any statute of limitations or the personal liability of [Zingale] has ceased.

This paragraph does not contain a new and unqualified promise to pay the Note. It provides that the rights "hereunder"—*i.e.,* to the collateral under the Pledge Agreement—may be exercised by Van Engel even if the right is barred by the statute of limitations or Zingale is dead or is no longer personally liable on the underlying debt. That is the purpose of the collateral—to protect the creditor even if the underlying debt has expired.[7]

¶ 27. Paragraphs 11 and 12 of the Pledge Agreement state:

> **Liability of [Van Engel].** [Van Engel] shall be obligated only to perform the duties described herein . . . . [Van Engel] shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized . . . .

[7] However, we express no opinion on whether this language would be binding in the context of federal bankruptcy proceedings.

> **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and assigns.

These paragraphs do not contain a new and unqualified promise to pay the Note. And, unlike the Note, Paragraph 12 specifically binds Zingale's heirs and personal representative to the terms of the Pledge Agreement. Hence, they are obligated to honor the Pledge Agreement although, apparently, they were not so obligated to honor the Note. The distinction is a significant variance in the terms of the Note and the Pledge Agreement.

¶ 28. In summary, we conclude that because the Pledge Agreement does not contain a new and unqualified promise to pay the Note, the Pledge Agreement did not extend the original statute of limitations. The statute of limitations on the Note expired in March 1998. Because this action was filed after that date, it is barred by WIS. STAT. § 893.43.

## II. Application of WIS. STAT. § 893.22

██

¶ 29. Even if the Pledge Agreement extended the statute of limitations to August 15, 2001, we conclude that Van Engel's claim is nonetheless barred because he did not file a petition to commence probate of Anthony Zingale's estate until August 12, 2002, and did not file this action against Zingale's widow until September 25, 2002.[8] We disagree with Van Engel's assertion that WIS. STAT. § 893.22 provides a one-year extension of the

---

[8] It is not necessary to address whether the August 12, 2002, filing of a petition for probate would allow the September 25, 2002, filing against Jennaro Zingale to fall within the

statute of limitations that begins to run when the creditor or another first petitions for probate of the decedent's estate. Section 893.22 provides:

> **Limitation in case of death.** If a person entitled to bring an action dies before the expiration of the time limited for the commencement of the action and the cause of action survives, an action may be commenced by the person's representatives after the expiration of that time and within one year from the person's death. *If a person against whom an action may be brought dies before the expiration of the time limited for the commencement of the action and the cause of action survives, an action may be commenced after the expiration of that time and within one year after the issuing, within this state, of letters testamentary or other letters authorizing the administration of the decedent's estate.*

(Emphasis added.)

¶ 30. In construing the first sentence of this statute, this court recently held that WIS. STAT. § 893.22 applies only when a person dies with an existing claim that has less than one year remaining on the period of limitations, and that in such cases, the period of limitations is extended for one year, which begins to run upon the person's death. *Walberg v. St. Francis Home, Inc.*, 2004 WI App 120, ¶ 7, 274 Wis. 2d 414, 683 N.W.2d 518, *review granted,* 2004 WI 138, 276 Wis. 2d 27, 689 N.W.2d 55 (Wis. Sept. 16, 2004). We explained:

> In *Curran v. Witter,* 68 Wis. 16, 22, 31 N.W. 705 (1887), the supreme court interpreted the predecessor to WIS. STAT. § 893.22 and held, "It is obvious that this provision only reaches a case where the person entitled to bring the action dies during the last year of the term of

applicable statute of limitations, because we conclude that the statute of limitations expired on August 15, 2001, before both filings.

limitation." That is, § 893.22 applies only when a person dies with an existing claim that has less than one year remaining on the period of limitations. In that case, the period of limitations is extended up to one year, which begins to run upon the person's death. Thus, in situations where a cause of action has more than one year remaining under its statute of limitations, § 893.22 simply does not apply."

*Walberg*, 274 Wis. 2d 414, ¶ 7 (footnotes and citations omitted).

¶ 31. In Wisconsin a person with a claim against a decedent—a creditor—may petition for probate after thirty days has passed since the death of the alleged debtor. A creditor is in a position to protect his claim by having a personal representative appointed. *See* WIS. STAT. § 856.07.[9] Thus, no logical reason suggests itself for a different interpretation of the second sentence of the statute than has been long applied to the first sentence. As we have seen, our courts have held that the extended time is only available if, at the time of death, there remains less than one year in which the estate can commence the action against an alleged debtor. It makes sense for the legislature to have

---

[9] WISCONSIN STAT. § 856.07 provides:

**Who may petition for administration. (1)** GENERALLY. Petition for administration of the estate of a decedent may be made by any person named in the will to act as personal representative or by any person interested.

(2) AFTER 30 DAYS. If none of those named in sub. (1) has petitioned within 30 days after the death of the decedent, petition for administration may be made by any person who was guardian of the decedent at the time of the decedent's death, any creditor of the decedent, anyone who has a cause of action or who has a right of appeal which cannot be maintained without the appointment of a personal representative or anyone who has an interest in property which is or may be a part of the estate.

provided all who are "interested" in the estate, whether as debtors or creditors, with essentially the same time—at least a year from the death in question—in which to begin suit on their claims. It is unreasonable to conclude that the legislature extended the statute to provide at least a year when the decedent had less than that amount of time at death to pursue his/her claim, but intentionally provided unlimited time for claims by a creditor against an estate. Such a construction is particularly tortured where, as here, more than a year remained for the creditor to pursue the claim at the date of the debtor's death. The legislature's interest in bringing timely closure to estates is also evident in the overall statutory probate scheme. There is no logical reason to read into this statute an award of more time to creditors to assert their claims against an estate than is awarded estates to make claims against their debtors. Consequently, we reject the construction urged here by Van Engel.

¶ 32. At the time of Zingale's death, October 4, 1999, the statute of limitations on the Pledge Agreement was due to expire on August 15, 2001. Thus, there remained at Zingale's death one year and a little over nine months in which Van Engel could have petitioned as a creditor for probate of Zingale's estate and thereafter filed a claim or brought an action on the Pledge Agreement. Because there was more than one year remaining on the statute of limitations at Zingale's death, the extensions provided by Wis. Stat. § 893.22 are not available to Van Engel to assert a claim arising out of the Pledge Agreement. This action is barred.

## CONCLUSION

¶ 33. For the reasons set forth above, we reverse the judgment and remand with directions that the trial

court enter judgment in Jennaro Zingale's favor, dismissing the complaint against her. Summary judgment is proper because, as we have seen above, Van Engel has alleged no viable cause of action against Jennaro Zingale. The statute of limitations on the Note has long expired, and with it the cause of action related to the Note.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 34. FINE, J. (*dissenting*). In 1980, Anthony J. Zingale, Ann Zingale's husband, borrowed some $96,000 from his friend and co-worker, telling him that he needed the money to buy a home. Over the years, despite continued requests and demands, Mr. Zingale neither repaid the loan nor any of the accumulating interest. When Mr. Zingale died in 1999, he owed several hundred thousand dollars. Relying on Mr. Zingale's acknowledgment of the debt in 1995, and what the trial court saw as Mr. Zingale's renewed promise to pay what he owed—all reified in a formal written 1995 agreement that expressly provided that the agreement was binding on Mr. Zingale's "heirs, personal representatives, successors and assigns,"—the trial court held that the statute of limitations did not bar this lawsuit to collect the money from Mrs. Zingale. The Majority holds that the trial court was wrong. Although, as noted below, our review of what the trial court did is *de novo,* I believe that it correctly decided the issues in this case. Accordingly, I would affirm, and respectfully dissent from the Majority's decision to reverse.

### I.

¶ 35. On October 24, 1980, Anthony J. Zingale gave a promissory note to Van Engel Commission for $96,141.90, with interest to run at six percent per

799

annum. The note was payable on October 24, 1985. According to an affidavit submitted by Van Engel Commission's president, Kurt Van Engel, in support of his company's motion for summary judgment, Mr. Zingale both worked for Van Engel Commission and was a stockholder in the company, and Van Engel Commission loaned the money represented by the note to Mr. Zingale so he "could buy a home." Mr. Van Engel's affidavit averred that Mr. Zingale did not pay the note when it matured in October of 1985, and, although Mr. Van Engel "frequently asked" Mr. Zingale to pay what he owed, and Mr. Zingale "said he would repay it when he could," he never did. Mrs. Zingale submitted an affidavit denying knowing about the note, the debt it purported to evidence, or any discussions her husband might have had with Mr. Van Engel, other than averring:

> I believe my husband never owed [Van Engel Commission] any money and that the note in question was signed in blank in the mid to late 1970s at a time when Mr. Van Engel [two other persons and her husband] were having problems with the unionization of their business. But because [Van Engel Commission] waited until after my husband's death to bring this collection action, I have no way of proving my husband's position on the note because he never discussed it with me or anyone in our family in detail. He did say to me that he didn't owe Kurt Van Engel anything.[1]

(Footnote added.) In its oral decision, the trial court

---

[1] None of the parties raises WIS. STAT. §§ 885.16 and 885.17, the Dead Man's statutes extant in Wisconsin, in connection with Mrs. Zingale's attempt to relate what her husband may have told her, although the trial court mentioned it briefly during its oral decision granting Van Engel Commission's motion for summary judgment. In a footnote and without further analysis,

assumed that the money evidenced by the note went toward the Zingale home, as Mr. Van Engel's affidavit said. Mrs. Zingale has not submitted contrary evidentiary material, and her briefs on appeal do not dispute the trial court's conclusion. Thus, I accept it as true. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) (matter not refuted deemed admitted). Indeed, Mrs. Zingale's lawyer elicited this from Mr. Van Engel at his deposition one month before Mr. Van Engel executed his affidavit.[2] Mrs. Zingale argues, however, that Mr. Van Engel's averment of his understanding of the loan's purpose is hearsay. It is not. There are two reasons.

¶ 36. First, hearsay "is a statement, other than one made by the declarant . . ., offered in evidence to prove the truth of the matter asserted." WIS. STAT. RULE 908.01(3). As phrased by the affidavit, Mr. Van Engel was not reciting *in haec verba* what Mr. Zingale told him; but, rather, was recounting his understanding of the loan's purpose, which could have been derived from sources other than what Mr. Zingale told him. Second, any inferred statement by Mr. Zingale that inheres in Mr. Van Engel's averment is not hearsay because it is a statement by someone from whom Mrs. Zingale's liabil-

---

Van Engel Commission asserts that the averment is hearsay. *See* WIS. STAT. ch. 908. Mrs. Zingale has not controverted this contention.

[2] The following is an excerpt from Kurt Van Engel's deposition. The question was asked by Mrs. Zingale's lawyer.

Q What did he say to you as to why he needed that amount of money?

A He needed to buy a house.

Q And did he buy a house?

A Yes, he did.

ity is derived and in whose shoes she thus stands for the purpose of the statement-by-a-party opponent exclusions from the hearsay rule in RULE 908.01(4)(b)1 and 4. *See Mills v. Damson Oil Corp.*, 691 F.2d 715, 716 (5th Cir. 1982) (Federal Rule of Evidence 801(d)(2)(D) applies to those whose liability is derivative of a predecessor). Insofar as WIS. STAT. §§ 885.16 and 885.17, Wisconsin's Dead Man's Statutes, are concerned, Mrs. Zingale has not objected on that ground, and, accordingly, whatever bar those provisions might erect to receipt of Mr. Van Engel's averment is waived. *See Giese v. Reist*, 91 Wis. 2d 209, 222–223, 281 N.W.2d 86, 92 (1979).

¶ 37. In March of 1989, Van Engel Commission sued Mr. Zingale seeking to collect on the 1980 note, which, as we have seen, was payable on October 24, 1985. The lawsuit was ultimately settled by the execution of an agreement between Mr. Zingale and Van Engel Commission dated August 15, 1995, and the action was "dismissed without prejudice" as a result. The August 15 agreement is central to the issues on this appeal.

¶ 38. The August 15 agreement was signed by both Mr. Zingale and Mr. Van Engel, the latter in his capacity as president of Van Engel Commission. The document is headed "Collateral Pledge Agreement" (uppercasing omitted) and acknowledged that Mr. Zingale owed Van Engel Commission "the sum of $96,141.90, plus interest, evidenced by the promissory note of [Mr. Zingale] dated October 24, 1980 for this amount." The "Collateral Pledge Agreement" also recites that Mr. Zingale "has agreed to pledge certain stock with [Van Engel Commission] as security for repayment of the loan." The "Collateral Pledge Agreement" then sets out

the parties' agreement in twelve numbered paragraphs. I discuss these paragraphs as they relate to the issues on this appeal.

¶ 39. Many of the paragraphs describe the collateral, its pledge, and the respective rights of Mr. Zingale and Van Engel Commission in the collateral. The other paragraphs, however, encompass the debt. Paragraph 7 provides that at Van Engel Commission's "option" and "without necessity for demand or notice, all or any part of the indebtedness shall immediately become due and payable, irrespective of any agreed maturity" if, among other things, Mr. Zingale either dies or does not pay the "principal or interest when due."[3] Paragraph 6 provides that Van Engel Commission "shall be under no duty or obligation whatsoever to make or give any present-

---

[3] The full paragraph 7 of the 1995 Agreement reads:

**Default.** At the option of [Van Engel Commission] and without necessity for demand or notice, all or any part of the indebtedness shall immediately become due and payable, irrespective of any agreed maturity, on the happening of any of the following events:

A. Failure of [Mr. Zingale] to keep or perform any of the terms or provisions of this Agreement.

B. Default by [Mr. Zingale] in the payment of principal or interest when due.

C. Any deterioration or impairment of collateral or any decline or depreciation in its value or market price, whether actually or reasonably anticipated, that causes collateral in the judgment of [Van Engel Commission] to become unsatisfactory as to character or value.

D. Levy of attachment, execution or other process against [Mr. Zingale] or any of the collateral.

E. Death, insolvency, failure in business, general assignment for the benefit of creditors, filing of any petition in bankruptcy or for relief under the provisions of federal bankruptcy laws of, by or against [Mr. Zingale].

ments, demands for performance, notices of nonperformance, protests, notices of protest or notices of dishonor in connection . . . with any obligations or evidences of indebtedness that constituted in whole or in part the indebtedness secured under this pledge." Paragraph 10 provides:

> This is a continuing security agreement, and all the rights, powers and remedies hereunder shall apply to all past, present and future indebtedness of [Mr. Zingale] to [Van Engel Commission], notwithstanding the death . . . of [Mr. Zingale] . . . . Until all debtedness is paid in full, all rights, powers and remedies granted to [Van Engel Commission] hereunder shall continue in effect and may be exercised by [Van Engel Commission] at any time, even though the right to recover the indebtedness or any part thereof is barred by any statute of limitations or the personal liability of [Mr. Zingale] has ceased.

Paragraph 12 provides: "This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and assigns."

¶ 40. Mr. Zingale died on October 4, 1999. Neither Mrs. Zingale nor any of the persons authorized by WIS. STAT. § 856.07(1) filed a petition for the administration of Mr. Zingale's estate. As permitted by § 856.07(2), Van Engel Commission filed the petition in August of 2002.[4] On September 25, 2002, Van Engel Commission brought this action against Mrs. Zingale to recover on the $96,141.90 note, plus interest. So far, no letters testamentary have issued in Mr. Zingale's estate.

On the happening of any of the foregoing specified events of default, any agreement for further financial accommodations by [Van Engel Commission] shall terminate at its option.

[4] WISCONSIN STAT. § 856.07 reads in full:

¶ 41. The trial court granted Van Engel Commission's motion for summary judgment for the note's full value plus interest.

## II.

¶ 42. Appellate review of the trial court's grant of summary judgment is *de novo. Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). In order to survive summary judgment, the party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material "set[ting] forth specific facts," WIS. STAT. RULE 802.08(3), pertinent to that element, *Transportation Insurance Co. v. Hunzinger Construction Co.,* 179 Wis. 2d 281, 290–292, 507 N.W.2d 136, 139–140 (Ct. App. 1993). Accordingly, Van Engel Commission had the burden to demonstrate that there were no issues of fact material as to whether Mr. Zingale gave it the note and agreed to the terms of the "Collateral Pledge Agreement." Mrs. Zingale has not submitted any evidentiary material that demonstrates there is any factual dispute on those matters. She asserts, however, that Van Engel Commission's attempt to collect on the note is barred by

---

**Who may petition for administration. (1)** GENERALLY. Petition for administration of the estate of a decedent may be made by any person named in the will to act as personal representative or by any person interested.

**(2)** AFTER 30 DAYS. If none of those named in sub. (1) has petitioned within 30 days after the death of the decedent, petition for administration may be made by any person who was guardian of the decedent at the time of the decedent's death, any creditor of the decedent, anyone who has a cause of action or who has a right of appeal which cannot be maintained without the appointment of a personal representative or anyone who has an interest in property which is or may be a part of the estate.

both the applicable statute of limitations and, alternatively, by laches. These are affirmative defenses, *see* WIS. STAT. RULES 802.02(3) (statute of limitations and laches); 802.06(2)(a)9 (statute of limitations), and she has the burden of showing facts that if true would establish those defenses, *see Transportation Insurance Co.*, 179 Wis. 2d at 290–292, 507 N.W.2d at 139–140. She also claims that she is not liable on the debt by virtue of the Marital Property Act, WIS. STAT. ch. 766. I discuss these matters in turn.

A. *Statute of Limitations.*

¶ 43. The parties agree that the six-year statute of limitations of WIS. STAT. § 893.43 applies. This provision requires that "[a]n action upon any contract, obligation or liability . . . shall be commenced within 6 years after the cause of action accrues or be barred." The parties also agree that a cause of action on Mr. Zingale's 1980 note accrued when it first became due on October 24, 1985. Thus, if the statute of limitations was neither extended nor tolled, any right to collect on the note would have expired on October 24, 1991. *See* WIS. STAT. § 990.001(4)(a) ("The time within which an act is to be done or proceeding had or taken shall be computed by excluding the first day and including the last."). As we have seen, Van Engel Commission sued Mr. Zingale in March of 1989 seeking to collect on the note. This tolled the running of the six-year statute of limitations. *See* WIS. STAT. § 893.13(2). Section 893.13(2) provides:

> A law limiting the time for commencement of an action is tolled by the commencement of the action to enforce the cause of action to which the period of limitation applies. The law limiting the time for commencement of the action is tolled for the period from the commencement of the action until the final disposition of the action.

As noted, Van Engel Commission's suit against Mr. Zingale was dismissed in August of 1995 concurrently with the parties' execution of the "Collateral Pledge Agreement," which, by its terms, was effective August 15, 1995. Van Engel Commission contends that this agreement started anew the running of the six-year statute of limitations. I agree.

¶ 44. In order to determine whether, as Van Engel Commission contends, the 1995 "Collateral Pledge Agreement" re-started the six-year statute of limitations, we have to see what it says to discern the parties' agreement. *Eden Stone Co. v. Oakfield Stone Co.*, 166 Wis. 2d 105, 116, 479 N.W.2d 557, 562 (Ct. App. 1991). This presents a legal issue that, like our review of a trial court's decision on summary judgment, appellate courts decide *de novo. Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990).

¶ 45. Unambiguous contracts must be enforced as they are written. *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–703 (Ct. App. 1979). Contract language is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *Borchardt*, 156 Wis. 2d at 427, 456 N.W.2d at 656. Further, courts must give effect to each of the agreement's provisions. *Koenings v. Joseph Schlitz Brewing Co.*, 126 Wis. 2d 349, 366, 377 N.W.2d 593, 602 (1985) ("agreement should be given a reasonable meaning so that no part of the contract is surplusage"); *Heritage Mut. Ins. Co. v. Truck Ins. Exch.*, 184 Wis. 2d 247, 258, 516 N.W.2d 8, 12 (Ct. App. 1994) (should interpret contract to give "reasonable meaning to all provisions"). I examine the 1995 agreement in this light.

¶ 46. As material here, the 1995 Agreement did three things. First, Mr. Zingale acknowledged his pre-

existing debt. Second, he gave to Van Engel Commission collateral to secure that pre-existing debt. Third, beyond the debt's collateralization, the Agreement affected the terms of the 1980 note, as we have seen, in the following ways:

- The Agreement provided that Mr. Zingale's debt to Van Engel Commission would "immediately become due and payable" either when he died or on the happening of any of the other specified events set out in paragraph 7 of the agreement, including, as we have seen, Mr. Zingale's "[d]efault . . . in the payment of principal or interest when due" or when he died.

 Thus, contrary to Mrs. Zingale's contention, adopted by the Majority, the Agreement did not substitute the collateral in place of the debt both evidenced by the 1980 note and acknowledged, *in haec verba,* by the Agreement itself. Rather, the Agreement promised that the debt would be "immediately" "due and payable" if:

 - Mr. Zingale violated "any" of the Agreement's "terms or provisions";

 - Mr. Zingale did not pay the "principal or interest when due";

 - The collateral deteriorated, depreciated, or was impaired;

 - Mr. Zingale died.

 The logical question asked in light of the Agreement's promise that the debt would be paid (that is, as phrased by the Agreement, "immediately become due and payable") is payable by whom? In my view, the Majority ignores this critical question. At oral argument, however, Mrs. Zingale conceded that the debt, by

808

virtue of paragraph 7 of the Agreement, would be payable by Mr. Zingale. That is a promise to pay.

- The Agreement provided that until Mr. Zingale's debt to Van Engel Commission was *"paid in full, all rights, powers and remedies granted* to [Van Engel Commission] hereunder shall continue in effect and may be exercised by [Van Engel Commission] at any time, even though the right to recover the indebtedness or any part thereof is barred by any statute of limitations." (Emphases added.)

 The "all rights, powers and remedies" clause perforce encompasses the rights granted by paragraph 7 of the Agreement—the right of the Commission to insist that Mr. Zingale pay the debt evidenced by the 1980 note and acknowledged by the Agreement. Thus, by providing—unequivocally—that "all rights" (including the "right" to have the debt "immediately become due and payable," that is *paid by Mr. Zingale,* survive the running of the statute of limitations, Mr. Zingale promised to pay his long-standing debt even though the statute of limitations might run.

- The provision that Mr. Zingale's "indebtedness shall immediately become due" when he died or the happening of any of other specified events set out in paragraph 7 of the agreement, including his nonpayment of "principal or interest when due," was a "right" granted by Mr. Zingale to Van Engel Commission by the "Collateral Pledge Agreement."

The circle is thus closed: By virtue of their 1995 Agreement, Mr. Zingale agreed that the "rights" granted to Van Engel Commission to have the debt on his death

809

or the other events be "immediately . . . due and payable" survive the running of the statute of limitations, and indeed, also promised that the debt would be paid, at the very latest, when he died. Mrs. Zingale is bound by her husband's agreement by virtue of paragraph 12 of the 1995 Agreement, which, as we have also seen provides: "This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, personal representatives, successors and assigns."

¶ 47. Giving effect to Mr. Zingale's promise to pay what he owed Van Engel Commission in return for its forbearance in taking judgment against him is consistent with RESTATEMENT (SECOND) OF CONTRACTS § 82 (1979):

> (1) A promise to pay all or part of an antecedent contractual or quasi-contractual indebtedness owed by the promisor is binding if the indebtedness is still enforceable or would be except for the effect of a statute of limitations.
>
> (2) The following facts operate as such a promise unless other facts indicate a different intention:
>
>> (a) A voluntary acknowledgment to the obligee, admitting the present existence of the antecedent indebtedness; or
>>
>> (b) A voluntary transfer of money, a negotiable instrument, or other thing by the obligor to the obligee, made as interest on or part payment of or collateral security for the antecedent indebtedness; or
>>
>> (c) A statement to the obligee that the statute of limitations will not be pleaded as a defense.

Although any of the subsections in § 82(2) would suffice as definitions of what a "promise" is under § 82(1)

because they are in the disjunctive, the 1995 Agreement between Mr. Zingale and Van Engel Commission satisfies all three. First, it acknowledged Mr. Zingale's debt to Van Engel Commission. Second, it gave collateral security for the debt. Third, it agreed that the expiration of the statute of limitations would not bar any of the rights given to Van Engel Commission by the agreement, which, as we have seen, included the right to have the debt be "immediately become due and payable" on Mr. Zingale's death or the happening of the other events set out in paragraph 7 of the Agreement, including his nonpayment of the "principal or interest when due." At the very least, operation of any of these factors, if any are applicable, started a new six-year statute of limitations on August 15, 1995.[5] *See* § 82 cmt. c ("[T]he extended or renewed obligation is subject to the statute of limitations and to other rules appropriate to the form and terms of the new promise."); *see also* § 82 cmt. f., illus. 16 ("A owes B $500, and writes B 'I cannot pay you now, but I will never set up the statute of limitations against your claim.' B delays bringing an action to collect his claim until more than the statutory period from the time of A's promise not to set up the statute has expired. A may then successfully assert the bar of the statute.").

¶ 48. Mrs. Zingale argues, however, that § 82(2) of the RESTATEMENT is not the law in Wisconsin, and points to three 19th-Century decisions by the Wisconsin Su-

---

[5] I need not decide whether any of the elements recognized by RESTATEMENT (SECOND) OF CONTRACTS § 82(2)(b) (1979), could operate as a permanent suspension of the statute of limitations. Van Engel Commission's brief concedes that "the new limitations period triggered by the 1995 Agreement would have expired in 2001."

preme in support, *Pritchard v. Howell*, 1 Wis. 118 [131] (1853), and two decisions that follow it, *Carpenter v. State*, 41 Wis. 36 (1876), and *Pierce v. Seymour*, 52 Wis. 272, 9 N.W. 71 (1881).

¶ 49. *Pritchard* involved an oral acknowledgement of, but not a promise to pay, a debt. 1 Wis. at 124 [139]. This was insufficient to extend the statute of limitations:

> We hold, therefore, that to take the case out of the operation of the statute, there must be an admission of the debt or obligation and an unqualified promise to pay the debt, or perform the contract made within the time limited by the statute, *or what is equivalent to such unqualified promise.*

*Id.*, 1 Wis. at 124 [138] (emphasis added).[6] *Carpenter* and *Pierce* followed *Pritchard*. *Carpenter*, 41 Wis. at 41, *Pierce*, 52 Wis. at 277–279, 9 N.W. at 72–73. Significantly, what *Pritchard* refers to as that which is "equivalent" to the required "unqualified promise" by the debtor to pay the debt is encompassed by § 82(2)(a) and (b) of the RESTATEMENT we have quoted earlier.

¶ 50. Although the RESTATEMENT's formulation in § 82(2)(a) and (b) of what is equivalent to an "unqualified promise" appears sound, it need not be used in this case to fill the interstice left open by *Pritchard* because in the August 1995 Agreement Mr. Zingale both admits his debt and, as we have seen, promises to pay it

---

[6] The Majority's discussion of *Pritchard v. Howell*, 1 Wis. 118 [131] (1853), and the early cases relying on *Pritchard*, ignores this critical component; namely, that "to take the case out of the operation of the statute, there must be an admission of the debt or obligation and an unqualified promise to pay the debt, or perform the contract made within the time limited by the statute, *or what is equivalent to such unqualified promise.*" *Id.*, 1 Wis. at 124 [138] (emphasis added).

without qualification. First, the acknowledgement is clear, and Mrs. Zingale concedes that. Second, Mr. Zingale's unequivocal promise to pay the debt is also spelled out in paragraph 7, where, among other triggering events, either Mr. Zingale's death or his non-payment of the debt's "principal or interest when due" precipitates, as we have just seen, Van Engel Commission's right to demand that "all or any part of the indebtedness shall immediately become due and payable, irrespective of any agreed maturity." And, as we have seen, and as Mrs. Zingale conceded at oral argument, the only payor who could be expected to pay the debt when he was alive was Mr. Zingale. Further, paragraph 10 specifically recognizes both that the debt will be "paid in full" and, also, that Van Engel Commission's rights under the agreement survive the running of the statute of limitations. This is, under any reasonable interpretation of the language, an unqualified promise that the debt will be paid by either Mr. Zingale when he is alive, and, after his death, by his "heirs, personal representatives, successors and assigns." Agreement, ¶ 12. Significantly, unlike the contingencies in *Carpenter* (ascertainment of what may be owed and subsequent legislative agreement, *Carpenter*, 41 Wis. at 43–44) and *Pierce* (the debtor's hope that he will have the money to repay, *Pierce*, 52 Wis. at 279–280, 9 N.W. at 74), death is inexorable and is contingent only as to date.

¶ 51. As noted, Van Engel Commission did not sue Mrs. Zingale in this case until September 25, 2002. Additionally, as also noted, it filed a petition for the administration of Mr. Zingale's estate because no such petition had been filed "by any person named in the will to act as personal representative or by any person interested." Wis. Stat. § 856.07(1). The petition was

filed on August 12, 2002. Under Wis. Stat. § 893.22, Van Engel Commission thus had until one year after the issuance "of letters testamentary or other letters authorizing the administration of the decedent's estate" to sue on the note.[7] So far, no letters testamentary have

---

[7] Wisconsin Stat. § 893.22 provides:

> If a person entitled to bring an action dies before the expiration of the time limited for the commencement of the action and the cause of action survives, an action may be commenced by the person's representatives after the expiration of that time and within one year from the person's death. *If a person against whom an action may be brought dies before the expiration of the time limited for the commencement of the action and the cause of action survives, an action may be commenced after the expiration of that time and within one year after the issuing, within this state, of letters testamentary or other letters authorizing the administration of the decedent's estate.*

(Emphases added.) I have double emphasized the words "within one year after the issuing, within this state, of letters testamentary or other letters authorizing the administration of the decedent's estate" because, in my view, the Majority misreads this statute by ignoring these words, and advances a rational for reversal not advanced by Mrs. Zingale.

The first sentence of Wis. Stat. § 893.22 applies, by its terms, *only* to situations where the *decedent* had a cause of action against someone else when he or she died. When that happens, those whose interests flow from the decedent are expected to act timely on their rights. The opposite, however, is true when the decedent dies *owing* someone money; then, those whose liability may flow from, or whose share of the estate might be diminished by, what the decedent owed have *no* incentive to start the ball rolling to facilitate the creditor's attempt at collection. That is why, in my view, the legislature sensibly provided that when a debtor dies, his or her heirs may not defeat attempts at collection by the expedience of not opening an estate. Thus, the section permits the creditors to get the collection-ball rolling, by permitting creditors to open the

814

issued in Mr. Zingale's estate. Accordingly, under the agreement and the application of § 893.22, Van Engel Commission has until one year after issuance of letters testamentary to sue on Mr. Zingale's debt.

¶ 52. Mrs. Zingale contends, however, that WIS. STAT. § 893.22 only suspends the statute of limitations for claims against estates, and that it does not apply to a claim asserted against her based on her husband's note. The clear language of that provision is not so limited, and Mrs. Zingale gives me no authority explaining why we should read in limiting language that is not there, especially because the provision is not in the probate chapters of the statutes, WIS. STAT. chs. 851–879, but, rather is in the general limitations-of-actions chapter, WIS. STAT. ch. 893. Moreover, a decision whether an estate may be liable for a decedent's debt, or whether that liability rests on someone as a consequence of his or her derivative liability under a contract clause similar to paragraph 12 of the 1995 Agreement, may be impossible to make until the estate proceedings have been commenced. Thus, it makes sense to apply § 893.22's extension of the statute of limitations to

decedent/debtor's estate and also by extending the statute of limitations in connection with the decedent's debts for one year after letters testamentary issue. As noted, the Majority ignores the language in § 893.22, which specifically provides that the one-year window opens only once "letters testamentary or other letters authorizing the administration of the decedent's estate" have issued.

Van Engel Commission's action against Mr. Zingale survives by virtue of WIS. STAT. § 895.01(1), which preserves the common-law survival-of-actions rules. *See Markman v. Becker*, 6 Wis. 2d 438, 441, 95 N.W.2d 233, 236 (1959) ("Causes of action upon contract survived at common law and therefore are expressly designated as surviving under" the predecessor to § 895.01(1)).

those whose liability, like Mrs. Zingale's potential liability, is derivative of that of a decedent. By the unrestricted language it chose for § 893.22, this is what the legislature has done.

¶ 53. Mrs. Zingale also makes much of the fact that the August 15, 1995, agreement is headed "Collateral Pledge Agreement." (Uppercasing omitted.) But, as we have seen, the Agreement encompasses much more than just the collateral Mr. Zingale pledged to secure his debt; it also reaffirms and promises to pay that debt. To ignore that part of the Agreement would violate one of the principles of contract-construction—no part of the contract should be ignored. *Koenings*, 126 Wis. 2d at 366, 377 N.W.2d at 602 ("agreement should be given a reasonable meaning so that no part of the contract is surplusage"). Moreover, as with the interpretation of statutes, titles are almost never dispositive of parameters of the parties' agreement. *See* Wis. Stat. § 990.001(6) ("The titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes."); *see PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 463 (5th Cir. 2001) (heading does not create rights inconsistent with language of agreement). In a sense, the 1995 Agreement and its title is analogous to 18 U.S.C. § 924, which, although titled "Penalties," creates "entirely new crimes." *Castillo v. United States*, 530 U.S. 120, 125 (2000). I agree with the trial court that the statute of limitations does not bar this action.

B. *Laches.*

¶ 54. We recently set out the elements of laches:

"For laches to bar a claim, an unreasonable delay must occur, the plaintiff must know the facts and take

816

no action, the defendant must not know the plaintiff would assert the right on which the suit is based, and prejudice to the defendant must occur."

*Policemen's Annuity & Benefit Fund v. City of Milwaukee*, 2001 WI App 144, ¶ 20, 246 Wis. 2d 196, 213, 630 N.W.2d 236, 244 (quoted source omitted).

¶ 55. Mrs. Zingale contends that Van Engel Commission's claim against her is barred by laches for four reasons. First, she claims that Van Engel Commission waited too long to seek to enforce the note because, as she puts it in her main brief on this appeal, although Van Engel Commission sued Mr. Zingale on the note in 1989, it not only "allowed it to languish for six years before taking the Collateral Pledge Agreement," but also "waited another seven years—and three years after the death of Anthony Zingale—before bringing the current action." Second, she argues that she "was never put on notice that [Van Engel Commission] would ignore the existence of the collateral and assert the 22–year old note against her personally." Third, she claims prejudice because her late husband is not available to testify. Fourth, she asserts that she is also prejudiced because of the "the accumulation of 22 years worth of interest."

¶ 56. Whether a contention that laches bars a claim presents a question of law for the court, and, therefore, is subject to our *de novo* review, involves a mixed question of law and fact to which we give the trial court's determination some deference, or requires a discretionary decision by the trial court entitled to great deference, has not yet been resolved. *Lohr v. Viney*, 174 Wis. 2d 468, 477–478, 497 N.W.2d 730, 734 (Ct. App. 1993). Under any standard of review, however, Mrs. Zingale's contentions are not supported by the

summary-judgment record, and she has not shown that there are any genuine issues of material fact requiring a trial. I analyze her contentions in turn.

1. *Alleged delay in seeking the note's payment.*

¶ 57. The note became due in October of 1985. According to the undisputed summary-judgment record, Mr. Van Engel repeatedly sought repayment from Mr. Zingale, and, ultimately, was forced to sue, which Van Engel Commission did in 1989. Again, according to the undisputed summary-judgment record, Van Engel Commission and Mr. Zingale settled the lawsuit in 1995. There is nothing in the summary-judgment record that indicates either that Mr. Zingale sought to have the action dismissed for lack of prosecution, *see* WIS. STAT. RULE 805.03, or that Van Engel Commission sought to take judgment. A fair inference from the summary-judgment record that is not disputed by Mrs. Zingale is that Van Engel and Mr. Zingale, co-shareholders in Van Engel Commission and co-workers (and, presumably, because of the loan and its home-buying purpose, friends), were trying to work things out. Further, as we have seen, Mr. Zingale specifically reaffirmed his debt in the 1995 Agreement and envisioned that it would be paid, at the latest, after his death. Additionally, whatever post-death delay there was in Van Engel Commission's attempt to collect on the note was, on the undisputed summary-judgment record, largely attributable to Mrs. Zingale's unexplained failure to open a probate estate. Mrs. Zingale has not satisfied her summary-judgment burden of showing that there are genuine issues of material fact as to whether there was an "unreasonable delay."

*2. Notice to Mrs. Zingale that Van Engel Commission would seek to collect on the note rather than the collateral.*

¶ 58. Insofar as can be gleaned from the undisputed summary-judgment record, Mr. and Mrs. Zingale were living together from 1980 to the date of Mr. Zingale's death. It is thus a fair inference, and one that is not rebutted by any evidentiary material submitted by Mrs. Zingale, that she was aware of both the 1989 lawsuit against her husband, and her husband's settlement of that lawsuit in 1995. As we have seen, the 1995 Agreement fully envisioned repayment of the debt with interest, either before or after Mr. Zingale's death; it did not even purport to substitute the collateral for the debt. Mrs. Zingale has not pointed to any evidentiary material in the summary-judgment record that permits an inference that she was misled into believing that Van Engel Commission would not seek repayment of the debt, rather than accept the collateral in lieu of such repayment.

*3. Alleged prejudice flowing from the unavailability of Mr. Zingale's testimony.*

¶ 59. First, the obvious: people die all the time —some unexpectedly, some after long illnesses. It would stretch the doctrine of laches beyond all reasonable utility to hold that the death of a potential witness, by that fact alone, made uncollectible any claim to which that person's evidence might be material. Second, this is a paper case. Neither the 1980 note nor the 1995 Agreement are ambiguous so as to permit the admission of collateral evidence. *See Kramer v. Alpine Valley Resort, Inc.*, 108 Wis. 2d 417, 426, 321 N.W.2d 293, 297 (1982) (absent fraud, mutual mistake, or duress, the

written terms of a contract that, as reflected by the document, encompass the parties' final expression of their agreement may not be modified or contradicted by an alleged understanding contrary to those written terms). Mrs. Zingale does not tell us *why* she is "prejudiced" by the inability of her late husband to testify in this case, or how any such potential testimony would be material to the issues here.

4. *Accumulation of interest.*

¶ 60. Insofar as is revealed by the summary-judgment record, Mrs. Zingale has, at least derivatively, had the use of the $96,000 for close to a quarter of a century. As the trial court pointed out, the time-value of money was not only recognized by the original note, which obligated Mr. Zingale to pay interest on the loan, but also, was acknowledged by him in the 1995 Agreement. Mrs. Zingale has not pointed to any evidentiary material in the summary-judgment record that shows that she is "prejudiced" by the accumulation of interest, as opposed to her natural unhappiness at the looming prospect of having to pay it.

C. *Marital Property Act.*

¶ 61. In a largely undeveloped argument, Mrs. Zingale contends that Van Engel Commission's proper recourse is against her husband's estate. As Van Engel Commission points out, however, WIS. STAT. § 803.045(2) specifically permits this action against Mrs. Zingale irrespective of whether she is determined at some point, and we do not have to decide this now, to be an "obligated spouse," an "incurring spouse," or neither. *See* WIS. STAT. § 766.55. Section 803.045(2) provides: "In an action on an obligation described in s. 766.55 (2) (a) or (b), a creditor may proceed against the

spouse who is not the obligated spouse or the incurring spouse if the creditor cannot obtain jurisdiction in the action over the obligated spouse or the incurring spouse." The only part of the referenced section that is material here is § 766.55(2)(b): "An obligation incurred by a spouse in the interest of the marriage or the family may be satisfied only from all marital property and all other property of the incurring spouse." Section 766.55(1) presumes that a debt incurred by one spouse during the marriage is "incurred in the interest of the marriage or the family."[8]

¶ 62. If the Majority's decision is reversed, whatever concerns Mrs. Zingale may have that are subsumed in her passing references to the Marital Property Act are not yet ripe for decision. WISCONSIN STAT. § 803.045(3) provides: "After obtaining a judgment, a creditor may proceed against either or both spouses to reach marital property available for satisfaction of the judgment." Section 803.045(4) provides: "This section does not affect the property available under s. 766.55(2) to satisfy the obligation." As potentially material to this dispute, WIS. STAT. § 766.55(2)(c)2 provides:

An obligation incurred by a spouse before, on or after January 1, 1986, that is attributable to an obligation arising before January 1, 1986, or to an act or omission

---

[8] WISCONSIN STAT. § 766.55(1) reads in full:

An obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, is presumed to be incurred in the interest of the marriage or the family. A statement separately signed by the obligated or incurring spouse at or before the time the obligation is incurred stating that the obligation is or will be incurred in the interest of the marriage or the family is conclusive evidence that the obligation to which the statement refers is an obligation in the interest of the marriage or family, except that the existence of that statement does not affect any interspousal right or remedy.

occurring before January 1, 1986, may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the enactment of this chapter.

If the Majority's decision is reversed, a determination of what property would be available to satisfy the debt owed to Van Engel Commission will have to await further proceedings, including the proceedings now pending in Mr. Zingale's estate. Suffice it to say, however, the Marital Property Act does not, as § 803.045(2) makes clear, bar this action. *See St. Mary's Hosp. Med. Ctr. v. Brody,* 186 Wis. 2d 100, 112–113, 519 N.W.2d 706, 711 (Ct. App. 1994).

## III.

¶ 63. For all of the reasons set out above, I would affirm the trial court. Accordingly, I respectfully dissent.