# H.K. CHRISTENSEN, personal representative of the Estate of H.K. Christensen, Sr., d/b/a L.C. Christensen & Co., Plaintiff-Appellant and Cross-Respondent,†

## v.

# EQUITY COOPERATIVE LIVESTOCK SALE ASSOCIATION, a Wisconsin corporation, Defendant-Respondent and Cross-Appellant.

Court of Appeals

*No. 85–1801. Submitted on briefs June 12, 1986.—Decided October 7, 1986.*

(Also reported in 396 N.W.2d 762.)

---

† Petition to review denied.

For appellant, briefs were submitted by *Nikolay, Jensen, Scott & Gamoke, S.C.*, of Colby, WI.

For defendant, briefs were submitted by *Terwilliger, Wakeen, Piehler & Conway, S.C.*, of Wausau, WI.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   L.C. Christensen & Co. appeals a judgment on the verdict dismissing its action for conversion of cattle against Equity Cooperative Livestock Sale Association. Equity acted as auctioneer for Gerald Pearson in numerous sales of cattle in which Christensen originally held a security interest. While Wisconsin apparently recognizes the right to maintain a conversion

301

action against an auctioneer who sells secured property, *see Production Credit Association v. Equity Coop Livestock Sales Association*, 82 Wis.2d 5, 8, 261 N.W.2d 127, 128 (1978), the jury found that Christensen had waived its right to security. Because we conclude that there is credible evidence to support the jury's finding, we affirm. *Fehring v. Republic Insurance Co.*, 118 Wis.2d 299, 305, 347 N.W.2d 595, 598 (1984); sec. 805.14(1), Stats. We therefore need not address Equity's cross-appeal.

Between 1977 and 1982, Pearson, a dairy farmer, purchased cattle from Christensen totaling more than fifty head by the year 1980. Pearson signed notes, and he also signed farm security agreements, including one in 1977 and one in 1980, giving Christensen security in certain scheduled property, as well as after-acquired property, including cattle. The first agreement allowed only for the sale of young male cattle, and the 1980 agreement allowed for the sale of dead or diseased cattle as well. All other sales required Christensen's written consent.

From 1977 through 1982, Pearson periodically sold the cattle through Equity. Some were sold because they were nonproductive, but others, Pearson admitted, were sold to raise money to make farm real estate payments. The total amount realized from the sales was $25,026.05, all of which went directly to Pearson. By 1982, Pearson had replaced his whole herd with rented cattle. Christensen, however, continued to receive payments from Pearson through a milk assignment with Pearson's milk producer until 1982, when Pearson defaulted and filed for bankruptcy.

Christensen explicitly consented to Pearson's sale of the first cow. Between that first sale and 1982, Chris-

tensen inspected the Pearson farm three or four times to verify the existence of the collateral. At no time did he object to the size of the herd, and it is undisputed that Christensen continued to sell to Pearson and that Pearson continued to sell through Equity during this period. The evidence also disclosed that when the security agreement was renewed in 1980, only thirty-one adult cattle were recorded as security, at least nineteen fewer, or 40% less, than the total sold to Pearson up to that time. Equity claimed, and the jury found, that Christensen waived his right to a security interest in the cattle by implied consent to the sales.[1]

Waiver is a voluntary and intentional relinquishment of a known right. *Mansfield v. Smith*, 88 Wis.2d 575, 592, 277 N.W.2d 740, 748 (1979). In establishing waiver, intent may be shown by conduct. *Attoe v. State Farm Mutual Automobile Insurance Co.*, 36 Wis.2d 539, 545, 153 N.W.2d 575, 579 (1967).

While the intent to waive may be inferred as a matter of law from the conduct of the parties, it is to be determined as a question of fact where the inference does not conclusively arise as a matter of law. *Hanz Trucking, Inc. v. Harris Bros. Co.*, 29 Wis.2d 254, 265, 138 N.W.2d 238, 244 (1965). The party asserting the existence of facts that give rise to a waiver has the burden of proving them. *See Montgomery v. Fuquay-*

---

[1] In this case, although the special verdict question was framed in terms of consent rather than waiver, Christensen did not object to the verdict on those grounds. Even if consent is distinct from waiver, a subject not raised by Christensen, failure to object constitutes a waiver. *Clark v. Leisure Vehicles, Inc.*, 96 Wis.2d 607, 616, 292 N.W.2d 630, 634 (1980); sec. 805.13(3), Stats.

*Mouser, Inc.*, 567 S.W.2d 268, 270 (Tex. Civ. App. 1978). Unless displaced by particular provisions of the code, the common law principles of law and equity supplement the code. Section 401.103, Stats.

Neither party disputes the applicability of the U.C.C. to this case. Christensen relies on secs. 401.205(4) and 402.208(2), Stats.,[2] for the proposition that because language of the contract prevails over usage of trade, course of dealing, and course of performance between the parties, Christensen's conduct was irrelevant. J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, sec. 3-3 at 101 (2d ed. 1980), points out: "[T]he provision that express terms control inconsistent course of dealing and its cohorts really cannot be taken at face value." The code itself recognizes the relevance of conduct. Section 402.208(3) provides that a course of performance inconsistent with any terms of an agreement shall be "relevant to show a waiver or modification" of that term. Further, comment 1 to sec. 402.208 provides: "The parties themselves know best what they have meant by their words of agreement and their action under that

---

[2] Section 401.205(4), Stats., provides:

The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

Section 402.208(2), Stats., provides:

The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (s. 401.205).

agreement is the best indication of what that meaning was." Official U.C.C. comment, Wis. Stat. Ann., sec. 402.208 (West 1964).

■

If more than one inference can be drawn from credible evidence, the matter is for the trier of fact and will not be disturbed on appeal. *Valiga v. National Food Co.*, 58 Wis.2d 232, 244, 206 N.W.2d 377, 384 (1973). The issue is not whether this court would have rendered the same verdict as the jury. *Hamed v. County of Milwaukee*, 108 Wis.2d 257, 272, 321 N.W.2d 199, 207 (1982).

The jury could have chosen to infer, as Christensen urged at trial, that the herd diminution was attributable to the undisputed customary practice of culling unproductive, sick or worn out cattle from the operation. If Christensen had so believed, he had no intent to relinquish his security rights.

The jury chose to accept instead an equally plausible inference. The inordinately large number of missing cattle, personally seen several times without inquiry or objection, followed by further sales to Pearson, meant Christensen was aware of sales outside the terms of the contract. Christensen made a deliberate choice to rely solely upon the milk checks for payment of the debt.

■

Although this court recently held in *Miracle Feeds, Inc. v. Attica Dairy Farm*, 129 Wis.2d 377, 381, 385 N.W.2d 208, 210 (Ct. App. 1986), that a creditor does not waive its security interest as against third parties by failing to "police" the debt, that holding is not determinative of this case. In deciding *Miracle Feeds*, this court relied on sec. 409.205, Stats.[3] The Official U.C.C. com-

[3] Section 409.205 provides in part:

ment 5 to sec. 409.205 provides a caveat to its application:

> Nothing in Section 9–205 prevents such "policing" or dominion as the secured party and the debtor may agree upon; business and not legal reasons will determine the extent to which strict accountability, segregation of collections, daily reports and the like will be employed.

Wis. Stat. Ann., sec. 409.205 (West 1964). The parties here agreed to "policing" by providing in their contracts a written consent to sell. It was this right that Christensen waived, and sec. 409.205 does not apply.

Christensen further complains on appeal that the trial court misinstructed the jury to the effect that, if it found that Christensen knew cattle were being sold and renewed the note in 1980 without taking other action, then it must find that Christensen did consent to sale of the cattle. Christensen's only objections to this instruction at trial were based upon grounds unrelated to those raised on appeal.

Generally, an objection not made to the trial court is waived. Contemporaneous objection gives the trial court the opportunity to correct its own errors and thereby avoids unnecessary delays through appeals, reversals, and new trials. *State v. Holt*, 128 Wis.2d 110, 124, 382 N.W.2d 679, 686 (Ct. App. 1985). Since the

---

A security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral (including returned or repossessed goods) or to collect or compromise accounts or chattel paper, or to accept the return of goods or make repossessions, or to use, commingle or dispose of proceeds, or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral.

appropriate objection to the consent instruction was not made to the trial court, the objection was waived. *McGarrity v. Welch Plumbing Co.*, 104 Wis.2d 414, 417 n.2, 312 N.W.2d 37, 39, n.2 (1981).

*By the Court.*—Judgment affirmed.