MILWAUKEE POLICE SUPERVISORS' ORGANIZATION,
Plaintiff-Appellant,†

v.

CITY OF MILWAUKEE, Defendant-Respondent.

MILWAUKEE POLICE ASSOCIATION, LOCAL 21, IUPA,
AFL-CIO, Plaintiff-Respondent,†

v.

CITY OF MILWAUKEE,
Defendant-Appellant.

Court of Appeals

*Nos. 2011AP1174, 2011AP1783.*
*Submitted on briefs February 6, 2012.*
*—Decided April 10, 2012.*

2012 WI App 59

(Also reported in 815 N.W.2d 391.)

†Petitions for Review denied 8/2/12.

On behalf of the plaintiff-appellant Milwaukee Police Supervisors' Organization, the cause was submitted on the briefs of *William R. Rettko* of *Rettko Law Offices, S.C.* of Brookfield.

On behalf of the defendant-respondent City of Milwaukee, the cause was submitted on the brief of *Grant F. Langley*, city attorney by *Donald L. Schriefer*, assistant city attorney of Milwaukee.

On behalf of the defendant-appellant City of Milwaukee, the cause was submitted on the briefs of *Grant F. Langley*, city attorney by *Donald L. Schriefer*, assistant city attorney of Milwaukee.

On behalf of the plaintiff respondent Milwaukee Police Association, Local 21, IUPA, AFL-CIO, the cause was submitted on the brief of *Jonathan Cermele* and *Brendan P. Matthews* of *Cermele & Associates, S.C.* of Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. KESSLER, J. These consolidated appeals challenge the circuit court's holdings regarding whether a City of Milwaukee (the City) ordinance requiring mandatory unpaid furlough days violated the collective bargaining agreements between the City and both the Milwaukee Police Supervisors' Organization (MPSO) and the Milwaukee Police Association (MPA). We consolidated these cases for decision because the outcome of both appeals depends on the construction of nearly identical contract language.[2]

¶ 2. In Appeal No. 2001AP1174, the MPSO appeals from the circuit court's finding that the ordinance imposing mandatory unpaid furloughs, though a substantial impairment of the MPSO's contract rights, served a legitimate public purpose. In finding that the ordinance was drafted in a manner that was reasonable and appropriate given the City's financial circumstances, the circuit court found the ordinance constitutional and dismissed the MPSO's complaint.

¶ 3. In Appeal No. 2011AP1783, the City appeals a circuit court order vacating an arbitration award in favor of the City, which interpreted the labor contract with the MPA to permit the mandatory furloughs. The MPA went to arbitration under its contract with the City. In the arbitration it argued that the furlough ordinance violated both the MPA contract and Wis.

[2] *See* WIS. STAT. § 809.10(3) (2009–10) (court of appeals may consolidate separate appeals on its own motion). All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

STAT. § 62.50(10). The arbitrator, Byron Yaffee, held that the MPA contract with the City was not violated by the ordinance. The MPA then filed for declaratory judgment asking the circuit court to vacate the award pursuant to WIS. STAT. § 788.10(1)(d).[3] The circuit court concluded that the ordinance violated the MPA contract and that Yaffee exceeded his powers when he acted in manifest disregard of the law by not applying § 62.50(10), which the circuit court interpreted as violating the labor agreement, and vacated the arbitration award.

¶ 4. Because we conclude that neither contract was violated by the City ordinance, we affirm the circuit court's judgment in favor of the City in Appeal No. 2011AP1174, although on different grounds. *See International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co.*, 2007 WI App 187, ¶ 23, 304 Wis. 2d 732, 738 N.W.2d 159 (We may affirm a judgment for reasons different from those of the circuit court.). We also reverse the circuit court's order vacating the arbitration award in Appeal No. 2011AP1783.

## BACKGROUND

**The Ordinance.**

¶ 5. On June 16, 2009, in response to unusually difficult economic conditions, the Milwaukee Common Council enacted Ordinance § 350-116, entitled "Manda-

---

[3] WISCONSIN STAT. § 788.10(1)(d) provides:

In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

. . . .

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

tory Unpaid Furloughs." The ordinance, through a related resolution, mandated up to two unpaid furlough days in 2009 for most City employees. Two groups, the fire and police departments, were largely exempt from the furloughs. As relevant to this appeal, it is undisputed that the ordinance gave the Police Chief sole authority to determine which employees, if any, were furlough-eligible. The Police Chief exempted most of his department's employees, but determined that eighty-two of the 289 members of the MPSO were furlough-eligible, most for two days.[4] He also determined that 213 of the 1679 members of the MPA were furlough-eligible for one or two days.

**The Litigation.**

**1. MPSO.**

¶ 6. On June 26, 2009, the MPSO, the exclusive bargaining unit for all Milwaukee Police Department sergeants, lieutenants, captains and deputy inspectors, filed a complaint on behalf of the furloughed members seeking declaratory judgment. The complaint alleged that the ordinance breached the base wage requirement set forth in Article 9 of its contract with the City, thereby violating the contract clauses of both the United States and Wisconsin Constitutions. The MPSO filed an amended complaint alleging, as relevant to this appeal, that the ordinance also violated Article 11 of the contract because the City did not have an unrestricted right to determine hours of work for MPSO members.

---

[4] The unpaid days off for MPSO members were nearly all scheduled in widely separate pay periods to minimize the financial effects. The average income lost by a furloughed police department employee for the two days was $582.32.

¶ 7. After a bench trial, the circuit court issued a decision dismissing the MPSO's complaint. Applying the three-part analysis discussed in *Chappy v. LIRC*, 136 Wis. 2d 172, 186–91, 401 N.W.2d 568 (1987), the circuit court found that: (1) the ordinance was a substantial impairment of the MPSO contract because the unpaid wages, which averaged $582.32 for the two furlough days, were more than nominal; (2) the ordinance was reasonably drafted to effectuate its purpose (noting that the MPSO was not the only group of governmental workers negatively impacted by the ordinance); and (3) the ordinance served the significant and legitimate public purpose of preventing further erosion of the City's economic situation by keeping the City's tax stabilization fund from dragging the City's bond rating into an unfavorable position. The MPSO appeals.

**2. MPA.**

¶ 8. On July 2, 2009, shortly after the first of the MPA's members were scheduled for furloughs, the MPA filed two grievances under its contract with the City. Relevant to this appeal, one of the grievances alleged that the ordinance violated Articles 10 and 14—the "Base Salary" and "Hours of Work" provisions—of the contract. Pursuant to the contract, the MPA and the City proceeded to arbitration. In arbitration, the MPA also argued that the unpaid days off violated Wis. Stat. § 62.50(10).[5] This statute prohibits the City from reduc-

---

[5] Wisconsin Stat. § 62.50(10) provides:

Provision may be made by the common council of a city by general ordinance that the salaries of the members of the force in the police and fire department of the city shall increase with the length of term of service. *The salary and compensation of all members of the force in such departments shall be at all times subject to change*

ing the salary and compensation of police force members without a prior written recommendation for the reduction from the board of the Fire and Police Commission. *See id.*

¶ 9. The arbitrator, Byron Yaffee, found that pursuant to Article 5 of the contract, the "Management Rights" provision, the City did not violate the contract by requiring unpaid furlough days. Yaffee declined to construe WIS. STAT. § 62.50(10) because it "applie[d] only to changes made by the Common Council" and was "irrelevant to this dispute." Yaffee wrote the "Common Council left the ultimate decision solely to the discretion of the Chief . . . in no way mandat[ing] furloughs of any unit members." He also noted that § 62.50(10) "has never been construed by Wisconsin's appellate courts."

¶ 10. The MPA sought declaratory judgment in the circuit court to vacate the arbitration decision. The MPA argued that Yaffee's contractual interpretation was a perverse construction of the contract and that the arbitrator exceeded his powers under WIS. STAT. § 788.10(1)(d) because he exhibited a manifest disregard for the law by refusing to apply or interpret WIS. STAT. § 62.50(10). The circuit court issued a written decision and order in which it vacated the award, finding that the furloughs violated both the contract and § 62.50(10). The circuit court further found that Yaffee demonstrated a "manifest disregard for the law" by not applying § 62.50(10), which also exceeded his

---

*by the common council*, but the salary or compensation of the members of the force in the service of either department *may not be decreased, except upon the previous recommendations of such change made in writing by the board [of the Fire and Police Commission] to the common council . . . .*

(Emphasis added.)

powers because he dismissed the grievance "without applying the proper law." The City appeals.

## DISCUSSION

¶ 11. The City contends that under the language of both contracts, the City retained the authority to determine work schedules, and thereby had the authority to schedule furlough days for MPSO and MPA members deemed furlough-eligible by the Police Chief. With regard to the circuit court order vacating the arbitration award, the City contends that because the contract was not violated, the MPA failed to establish facts or controlling law necessary for the circuit court to overturn the arbitration award. We agree.

## I. The Contracts.

### *Standard of Review.*

¶ 12. "The interpretation of a written contract is a question of law that we review *de novo*." *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 27, 301 Wis. 2d 752, 734 N.W.2d 169. "[A]n agreement should be given a reasonable meaning so that no part of the contract is surplusage." *Koenings v. Joseph Schlitz Brewing Co.*, 126 Wis. 2d 349, 366, 377 N.W.2d 593 (1985). "To ignore [a] part of the Agreement would violate one of the principles of contract-construction-no [sic] part of the contract should be ignored." *Kurt Van Engel Comm'n Co., Inc. v. Zingale*, 2005 WI App 82, ¶ 53, 280 Wis. 2d 777, 696 N.W.2d 280. We first consider specific language in each contract as a whole. *See id.* "[T]he cornerstone of contract construction is to

370

ascertain the true intentions of the parties as expressed by the contractual language." *State ex rel. Journal/ Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990). Unless the contractual language is ambiguous, the contract must be enforced as written. *See Yee v. Giuffre*, 176 Wis. 2d 189, 192–93, 499 N.W.2d 926 (Ct. App. 1993).

¶ 13. As relevant to this appeal, both contracts provide language pertaining to the City's management rights, hours of work, and conflict resolution should the contracts conflict with legislation. Specifically, with regard to the City's management rights, the contracts provide:

[MPSO]: ARTICLE 5. **Management Rights.**

Except as specifically provided otherwise by this Agreement, any and all rights concerning the management and direction of the Police Department and the Police force shall be exclusively the right of the City and the Chief of Police.

Specifically, and without limitation by enumeration, the City shall have the following *unrestricted* rights:

> The MPSO recognizes the right of the City . . . to operate and manage their [sic] affairs in all respects.
>
> . . . .
>
> The City shall determine work schedules and establish methods and processes by which such work is performed.

(Emphasis added.)

[MPA]: ARTICLE 5. **Management Rights.**

The Association recognizes the right of the City . . . to operate and manage their [sic] affairs in all respects in accordance with the . . . ordinances of the City . . . .

. . . .

The City shall determine work schedules and establish methods and processes by which such work is performed.

. . . .

Any and all rights concerning the management and direction of the Police Department and the police force shall be exclusively the right of the City unless otherwise provided by the terms of this Agreement[.]

¶ 14. Both contracts (Article 11 of the MPSO contract and Article 14 of the MPA contract) describe "normal" hours of work identically:

The *normal* hours of work for employees covered by this Agreement shall consist of work shifts of eight (8) consecutive hours which *in the aggregate* results in an *average* work week of forty (40) hours.

(Emphasis added.)

¶ 15. Both contracts also state that the labor agreements are subordinate to the City's legislative authority:

[MPSO]: ARTICLE 4.

In the event that the provisions of this Agreement or its application . . . conflicts with the legislative authority delegated to the City Common Council . . . by the Municipal Budget Law . . . then *this Agreement shall be subordinate to such authority.*

(Emphasis added.)

[MPA]: ARTICLE 4.

In the event that the provisions of this Agreement or its application . . . conflicts with the legislative authority

which devolves upon the Common Council of the City of Milwaukee . . . pertaining to . . . the Municipal Budget Law . . . or other applicable laws or statutes, *this Agreement shall be subject to such provisions.*

(Emphasis added.)

■

¶ 16. First, the clear language of the contracts— language to which MPSO and MPA agreed—recognizes the City's clear contract right to "determine work schedules." The furlough is a part of scheduling an essential workforce. Further, the parties agreed that the City retains all management rights not specifically limited or excluded by the contracts. This is evidenced by Article 5 of the MPSO contract, which states that "[e]xcept as specifically provided otherwise by this Agreement, *any and all rights concerning the management and direction of the Police Department and the Police force shall be exclusively the right of the City.*" (Emphasis added.) Similarly, Article 5 of the MPA contract reflects the same concept by stating: "Any and *all rights concerning the management and direction of the Police Department and the police force shall be exclusively the right of the City unless otherwise provided by the terms of this Agreement.*" (Emphasis added.) The contract excerpts provided by the MPSO do not discuss "furloughs" or their equivalent, "mandatory unpaid time off." Nor does the MPA contract establish any specific limitation on furloughs or mandatory unpaid time off. No party brought such specific limitations to our attention, and we found none in our independent review of both contracts.

¶ 17. Next, the plain language of the contract also compels us to reject the MPSO's contention that officers are *always* to be paid for forty-hour work weeks,

thereby making mandatory unpaid furloughs a violation of the contract. The MPSO argues that the use of the word "shall" in the "Hours of Work" provision mandates payment for no less than eight hours per day and forty hours per week. To accept the MPSO's interpretation, we would have to ignore the contract's description of the forty-hour work week as "normal" and "average." Both "normal" and "average" implicitly acknowledge that not every work week will be exactly the same. One does not describe a "normal" work shift unless it is expected by the parties that there will be deviations from the norm. Similarly, describing an "aggregate" "average" total work week is recognition that not every work week will total exactly forty hours. The MPSO's reading of "normal" shifts and "average" weeks as mandatory requires that we ignore other contract provisions which contemplate flexibility in work schedules both above and below the "normal" or "average." Article 9 of the MPSO contract provides a five-page summary of "biweekly pay period base salaries" for the various covered positions, and then confirms the flexibility in actual work hours by agreeing:

> [W]hen less than the full schedule of hours is worked by an employee during any such biweekly pay period, the employee's biweekly base salary shall be reduced by an amount equivalent to one-eightieth (1/80) of his/her biweekly base salary for each hour or fraction thereof to the nearest 0.1 of an hour during which work is not performed.

If the "normal" or "aggregate" "average" is an inflexible mandate as the MPSO argues, these provisions would be meaningless surplusage. We cannot ignore specific contract language, and we must construe the contract to give effect to all provisions. *See Kurt Van Engel*, 280 Wis. 2d 777, ¶ 53; *Koenings*, 126 Wis. 2d at 366.

374

¶ 18. Finally, the parties agreed in their contracts that neither contract is violated by legislation which the City has the authority to adopt. In Article 4 of both the MPSO and MPA contracts, the parties agree that their contract rights are subordinate to City legislative activity which derives its authority from, among other sources, "the Municipal Budget Law." There is no challenge here to the City's *authority* to adopt the furlough ordinance. Rather, with regard to the MPSO, the claim is that the ordinance breached the existing contracts, thereby violating the MPSO's constitutional protection of its contract rights. In addition to a contract violation, a constitutional violation requires a finding that the ordinance was not reasonably tailored to advance the purpose for which it was adopted. *See Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, ¶¶ 55–57, 295 Wis. 2d 1, 719 N.W.2d 408. Because we conclude that the ordinance did not violate any provision of either labor agreement, we do not reach the constitutional issues. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (We decide cases on the narrowest possible grounds.).

## II. The Arbitration Award.

### Standard of Review.

¶ 19. "Under WIS. STAT. § 788.10(1)(d), a court 'must' vacate an arbitration award if it concludes that an arbitrator has 'exceeded [his or her] powers.' " *Wisconsin Dep't of Emp't Relations v. Wisconsin State Bldg. Trades Negotiating Comm.*, 2003 WI App 178, ¶ 17, 266 Wis. 2d 512, 669 N.W.2d 499 (citation omitted;

brackets in *Wisconsin Dep't of Emp't Relations*). "In determining 'whether the award of the arbitrator was outside the scope of [the arbitrator's] authority and contrary to law,' we begin with a presumption that the award is valid, and we will set it aside only if 'its invalidity is demonstrated by clear and convincing evidence.' " *Id.* (citation omitted; brackets in *Wisconsin Dep't of Emp't Relations*; some grammatical changes added). The decision of an arbitrator cannot be interfered with for mere errors of judgment as to law or fact, and an award cannot be overturned unless "there is a perverse misconstruction or if there is positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." *Joint Sch. Dist. No . 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 117–18, 253 N.W.2d 536 (1977).

¶ 20. Our supreme court applied Wis. Stat. § 788.10(1)(d) in a case involving an arbitrator's construction of a labor contract in *Baldwin-Woodville Area School District v. West Central Education Association*, 2009 WI 51, 317 Wis. 2d 691, 766 N.W.2d 591. The court emphasized that an award is to be upheld if there is " 'some reasonable foundation for the interpretation of the contract offered in the [arbitrator's] decision.' " *Id.*, ¶ 22 (citation omitted). Conversely, "[w]hen there is *no* contractual language that would allow for the arbitrator's construction, there is *no* reasonable foundation for the award." *Id.* ¶ 23 (emphasis added). "In such a case, the arbitrator perversely misconstrues the contract and exceeds the authority granted by the collective bargaining agreement . . . . Whether an arbitrator has exceeded his authority by perversely miscon-

376

struing the parties' agreement is a question of law" reviewed independently of the circuit court's determination. *Id.*

■■■

¶ 21. Yaffee, in a thorough and reasoned decision analyzing the contract, concluded that the City did not violate the contract when it adopted the furlough ordinance. Specifically, Yaffee pointed to Article 5, Section 5, which grants the City the right to determine work schedules. Yaffee also found that Article 14, the "Hours of Work" provision, did not preclude the City from scheduling less than the "normal" or "average" hours specified there under the particular facts of the present case. Therefore, Yaffee concluded that the "Base Salary" provision of the contract, addressing when MPA members receive their biweekly salaries and how those salaries are reduced, was not violated by the unpaid furlough requirements.

¶ 22. In his written decision, Yaffee stated that it would be inappropriate for him to construe WIS. STAT. § 62.50(10) because the meaning of the statute was disputed in the case before him, the statute had never been construed by Wisconsin appellate courts, and he considered the statute irrelevant because the furloughs were imposed on the grievants not by the Common Council, but by the Police Chief (who had the power under the ordinance to exempt his entire department from furloughs).

¶ 23. The circuit court vacated the arbitration award, finding that Yaffee exceeded his authority by not applying WIS. STAT. § 62.50(10), which allows the Common Council to decrease salaries for police officers when the decrease is preceded by a written recommendation for the decrease by the board of the Fire and Police Commission. *See id.* Because Yaffee did not apply

the statute, the circuit court concluded that Yaffee acted in a manifest disregard for the law. The circuit court then construed § 62.50(10) so as to hold the furloughs in violation of that statute and the labor contract.

¶ 24. No party to this appeal has cited, and our own research has not discovered, any decision construing WIS. STAT. § 62.50(10), except that of the circuit court in this case. The circuit court's singular construction of a statute, which has never been construed in any opinion with precedential value, is no evidence, much less "clear and convincing evidence," of a "manifest disregard for the law" by the arbitrator.

¶ 25. Rather, Yaffee's cautious approach to the limits of an arbitrator's authority evidences a manifest respect for the limited role of an arbitrator, which here is to construe the MPA contract. *See Wisconsin Law Enforcement Ass'n, Local 1 v. DOT*, 2010 WI App 27, ¶ 10, 323 Wis. 2d 444, 780 N.W.2d 170 (Ct. App. 2009) (" '[T]he power of the arbitrator is derived solely from the contract, and that authority is, therefore, limited by the terms of the contract.' ") (citation omitted). The MPA contract states that the arbitrator "shall neither add to, detract from, nor modify the language of the Agreement . . . in arriving at a determination of any issue presented" and "shall expressly confine himself . . . to the precise issues submitted for arbitration and shall have no authority to determine any other issue not so submitted . . . or to submit observations or declarations of opinion which are not directly essential in reaching the determination." Yaffee was scrupulous in honoring those limitations. Yaffee's conclusion that the meaning of WIS. STAT. § 62.50(10) was simply not relevant because the Police Chief, not the Common

Council, had imposed the specific furloughs involved in the grievance, is consistent with the limitations of his authority. His construction of the contract is supported by the plain language of the contract, *see Baldwin-Woodville*, 317 Wis. 2d 691, ¶¶ 20–22, and is the antithesis of a manifest disregard for the law. We conclude there is no basis under WIS. STAT. § 788.10(1)(d) and applicable case law to vacate the award. *See Joint Sch. Dist.*, 78 Wis. 2d at 117–18.

## CONCLUSION

¶ 26. We affirm the circuit court's judgment dismissing the MPSO complaint, although on different grounds than those explained by the circuit court. *See International Flavors & Fragrances, Inc.*, 304 Wis. 2d 732, ¶ 23.

¶ 27. We reverse the circuit court's order vacating the MPA arbitration award and remand with directions to enter an order confirming the award and to take such other action as may be required, consistent with this opinion.

*By the Court.*—Judgment affirmed; Order reversed and cause remanded with directions.