COURT OF APPEALS
DECISION
DATED AND FILED

October 10, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP567**

STATE OF WISCONSIN

Cir. Ct. No. **2021CV253**

IN COURT OF APPEALS
DISTRICT IV

---

S & L PROPERTIES NEW PINERY, LLC,

    PLAINTIFF-APPELLANT,

  V.

TODD W. BENNETT, MARK H. BENNETT, AND JOHN D. BENNETT,

    DEFENDANTS-RESPONDENTS,

KWIK TRIP, INC.,

    INTERVENOR-DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Columbia County: MICHAEL P. SCRENOCK, Judge. *Reversed*.

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

¶1 TAYLOR, J. S&L Properties New Pinery, LLC, purchased part of a parcel of land owned by brothers Todd W. Bennett, Mark H. Bennett, and

John D. Bennett (collectively, "the Bennetts").  The Bennetts retained the remainder of the parcel, which is the property at issue here ("the Property").  As part of the land purchase, S&L obtained a right of first refusal on any future sale of the Property.  S&L and the Bennetts executed a right of first refusal agreement ("the ROFR Agreement"), which provides that, if the Bennetts receive an offer to purchase all or any part of the Property that they are willing to accept, the Bennetts must provide written notice of that offer, as well as a copy of the offer itself, to specified S&L representatives.  Once the Bennetts provide the written notice, S&L has 30 days to exercise its right to purchase the Property on the same terms as the offer.

¶2      The Bennetts accepted an offer to purchase the Property from Kwik Trip, Inc., and S&L asserted its right of first refusal to purchase the Property.  The Bennetts declined to sell the Property to S&L, contending that S&L failed to exercise its right of first refusal within 30 days after receiving notice of the offer.  S&L sued the Bennetts for breach of contract, alleging that the Bennetts violated the ROFR Agreement, and Kwik Trip intervened seeking declaratory judgment entitling it to purchase the Property.  The circuit court granted summary judgment for the Bennetts and Kwik Trip (collectively, "Respondents"), concluding that S&L did not timely exercise its right of first refusal.  S&L appeals.[1]

---

[1] Pursuant to a stipulation by the parties, the circuit court granted an injunction prohibiting the Bennetts from selling the Property to Kwik Trip until the final adjudication on the merits or a settlement by the parties.  The court dissolved this injunction at the same time that it granted summary judgment for the Respondents, and it denied S&L's motion to stay the order during the pendency of the appeal.  S&L filed a motion to stay with this court, and we restored the stipulated temporary injunction pending disposition of this appeal.

¶3     We conclude that the undisputed facts establish that S&L timely exercised its right of first refusal under the ROFR Agreement and that S&L is entitled to summary judgment on its breach of contract claim. Accordingly, we reverse.

## BACKGROUND

¶4     There is no dispute as to the following material facts.

¶5     The Property is a commercial lot owned by the Bennetts that is located at 2725 and 2727 New Pinery Road in Portage, Wisconsin. S&L purchased an adjacent lot from the Bennetts in 2015, and it currently leases this lot to an entity that operates a Culver's restaurant ("the Culver's lot").

¶6     As part of its purchase of the Culver's lot, S&L obtained a right of first refusal on the sale of "all or any part" of the Property, which is memorialized in the ROFR Agreement. Section 1 of the ROFR Agreement provides in pertinent part as follows. S&L's right of first refusal is triggered if the Bennetts receive a "bona fide written offer" from a third party for the purchase of "all or any part of the Property" and the Bennetts are "willing to accept" the offer. If these conditions are met, then the Bennetts must give S&L "written notice thereof," which notice "shall include a copy of the Offer." This notice is referred to as the "Grantor Notice." S&L has the right for thirty days after the receipt of the Grantor Notice to exercise its right of first refusal by giving the Bennetts written notice that it desires to enter into an agreement on the same terms as those contained in the offer. If S&L exercises its right of first refusal within thirty days of receiving the Grantor Notice, then S&L and the Bennetts must enter into an agreement on the same terms as those contained in the offer. If S&L fails to exercise its right of first refusal within thirty days of receiving the Grantor Notice, then the Bennetts

3

may enter into an agreement with the third party on the same terms as contained in the offer.[2]

¶7 Section 12 of the ROFR Agreement provides, in pertinent part, that each party required to give notice pursuant to the ROFR Agreement must do so by personal delivery or by certified or registered mail. Notice to S&L must be addressed to the attention of Jeffrey J. Liegel, one of the managers of S&L, and to the attention of Richard Latta, S&L's attorney on matters related to the ROFR Agreement, at the separate addresses provided for Liegel and Latta.[3]

---

[2] Section 1 of the ROFR Agreement provides in full:

> Right of First Refusal. Grantor hereby grants to Grantee a right of first refusal (the "ROFR") for the purchase of the real property located in Columbia County, Wisconsin, more particularly described in Exhibit A attached hereto (the "Property"). Grantor and Grantee agree that if Grantor receives a bona fide written offer from a third party for either (a) the purchase of all or any part of the Property or (b) the lease of all or a portion of the Property pursuant to a ground lease in which the term (which shall include all possible renewal terms) is thirty (30) years or greater (in either case, an "Offer"), which Offer Grantor is willing to accept, Grantor will give Grantee written notice thereof (such notice shall include a copy of the Offer) (the "Grantor Notice"). Grantee shall have the right for thirty (30) days after the receipt of the Grantor Notice to give Grantor written notice that Grantee desires to enter into an agreement with Grantor on the same terms as are set forth in the Offer (the "Grantee Notice"), which right of Grantee shall be paramount to the rights of the third party. Thereafter, if Grantee elects to exercise the ROFR by providing the Grantee Notice to Grantor, then Grantor and Grantee shall enter into an agreement on the same terms as contained in the Offer within thirty (30) days of delivery of the Grantee Notice. If Grantee fails to exercise the ROFR within the time herein specified, Grantor shall be at liberty to enter into an agreement with the third party at the same price and on the same terms as contained in the Offer.

[3] Section 12 of the ROFR Agreement provides in full:

(continued)

4

¶8     At the same time that the ROFR Agreement was executed, S&L and the Bennetts also executed an "Easement Agreement" that grants S&L certain nonexclusive parking and ingress and egress easements on the Property. This agreement allows S&L to use approximately 57 parking spaces on the Property. Although the Easement Agreement is not at issue in this appeal, it is relevant to whether S&L timely executed its right of first refusal as discussed in more detail below.

---

Notices and Correspondence. Whenever in this Agreement it shall be required or permitted that notice be given by any party hereto to the other, such notice shall be given by personal delivery or by certified or registered mail, and any notice so sent shall be deemed to have been given when delivered or on the date that the same is deposited in the United States mail, postage prepaid. Mailed notices shall be addressed to the parties at the following addresses, or at such other address as a party may hereafter designate by written notice to the other party:

To Grantee:     S&L Properties New Pinery, LLC
                2651 Kirking Court
                Portage, WI 53901
                Attn: Jeffrey J. Liegel

Copy to:        Godfrey & Kahn, S.C.
                1 East Main Street, Suite 500
                Madison, WI 53703
                Attn: Richard Latta

To Grantors:    Todd W. Bennett
                135 West Cook Street
                P.O. Box 30
                Portage, WI 53901

The addresses for the purpose of this paragraph may be changed by giving notice of such change in the manner provided herein for the giving of notice. Unless and until such written notice is received, the last address stated herein shall be deemed to continue in effect for all purposes.

¶9      In January 2021, the Bennetts accepted an offer from Kwik Trip to purchase the Property.  The Bennetts attempted to notify S&L of this offer on three occasions.  In their first attempt on June 25, 2021 ("the June 25 delivery"), the Bennetts provided S&L with what was purported to be a copy of Kwik Trip's offer to purchase, which was personally delivered to Liegel with a copy sent by U.S. mail to Latta.[4]  The offer stated, in relevant part, that Kwik Trip offered to purchase "certain property" located at 2725 and 2727 New Pinery Road, Portage, Wisconsin, "plus that part of vacated Bennett Drive, as generally described and depicted on attached Exhibit A (the legal description of which shall be verified by an ALTA survey to be commissioned by Buyer)."  The copy of the offer to purchase provided to Liegel and Latta did not contain Exhibit A or the pages containing the signatures of Kwik Trip and the Bennetts indicating that Kwik Trip's offer had been accepted by the Bennetts.

¶10     On July 23, 2021, Chad Stevenson—one of the managers of S&L—sent a letter to the Bennetts by email and Federal Express stating that the June 25 delivery did not satisfy the notice requirements of the ROFR Agreement because it

---

[4] We observe that the ROFR Agreement provides that the Bennetts are "at liberty" to enter into an offer to purchase agreement regarding all or part of the Property with a third party if S&L fails to exercise its right of first refusal within thirty days after receiving proper notice of the offer.  Here, the Bennetts accepted Kwik Trip's offer to purchase the Property before providing the required notice of the offer to S&L, raising the issue of whether the Bennetts' acceptance of Kwik Trip's offer before providing the required notice to S&L breached the ROFR Agreement.  We also observe that the ROFR Agreement requires that, if the Bennetts provide notice of an offer to purchase by mail, it shall be by certified or registered mail.  Here, although the notice provided to Latta on June 25 indicates that it was sent by U.S. mail, it does not indicate whether the notice was sent by certified or registered mail, raising a potential issue of whether this method of notice complied with the ROFR Agreement.  However, neither of these issues were raised by the parties in the circuit court or in this appeal, and we resolve this appeal on other grounds.  Therefore, we will not address these issues further.  *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ( "An appellate court need not address every issue raised by the parties when one issue is dispositive.").

did not include Exhibit A and the signature pages of the offer. Stevenson's letter instructed the Bennetts to "correct these items and provide a new 'Grantor Notice' as described in … the ROFR Agreement."

¶11    On their second attempt to deliver the offer on July 27, 2021 ("the July 27 delivery"), the Bennetts personally delivered copies of the missing Exhibit A and the signature pages to Stevenson, but they did not deliver copies of these documents to Liegel or Latta. The Bennetts did not include with this delivery a copy of the offer that they had previously delivered to Liegel and Latta on June 25.

¶12    On August 26, 2021, a Kwik Trip representative emailed the Bennetts that S&L "still need[s] proper paperwork regarding [it] 'waiving' … [its] right [of] first refusal." On their third attempt, on August 31, 2021 ("the August 31 delivery"), to provide notice of the offer to purchase, the Bennetts personally delivered the complete offer to Stevenson, including Exhibit A and the signature pages, but they again did not personally deliver or mail the complete offer with Exhibit A and the signature pages to Liegel and Latta.

¶13    On September 1, 2021, S&L notified the Bennetts that it was exercising its right of first refusal to purchase the Property on the same terms as Kwik Trip's offer. The Bennetts responded in a letter that they intended to honor Kwik Trip's offer to purchase because S&L did not exercise its right of first refusal within 30 days after the Bennetts provided notice of the offer pursuant to the ROFR Agreement.

¶14    S&L filed this action against the Bennetts in the Columbia County Circuit Court alleging breach of contract for not accepting S&L's exercise of its right of first refusal. As relief, S&L sought an order for specific performance

requiring the Bennetts to abide by the terms of the ROFR Agreement and to enter into an agreement to sell the Property to S&L. Kwik Trip intervened in the action and asserted a counterclaim that sought a declaration of its right to purchase the Property.[5]

¶15     S&L and the Bennetts each moved for partial summary judgment on S&L's breach of contract claim, and Kwik Trip moved for summary judgment on its counterclaim for a declaratory judgment. The circuit court granted the Bennetts' and Kwik Trip's summary judgment motions and denied S&L's summary judgment motion. The court concluded that the June 25 and July 27 deliveries collectively provided S&L with a complete copy of the offer to purchase and therefore constituted proper notice under the ROFR Agreement. Because S&L exercised its right of first refusal on September 1, more than thirty days after the July 27 delivery, the court determined that S&L's exercise of its right of first refusal was untimely. S&L appeals.

## DISCUSSION

¶16     On appeal, S&L argues that it is entitled to summary judgment because the undisputed facts establish that proper Grantor Notice was not given until the August 31 delivery and, therefore, its September 1 exercise of its right of first refusal was timely. Respondents argue that S&L's exercise of its right of first

---

[5] In response to S&L's complaint, the Bennetts filed a counterclaim alleging that S&L had breached the parties' Easement Agreement. After Kwik Trip intervened, S&L filed an amended complaint that added Kwik Trip to the caption and asserted another breach of contract claim against the Bennetts regarding the Easement Agreement. The amended complaint did not change S&L's breach of contract claim regarding the ROFR Agreement. Claims regarding the Easement Agreement are not at issue in this appeal and will not be addressed further.

refusal was untimely because the undisputed facts establish that proper notice was given on June 25 or, alternatively, on July 27.

## I.  Standard of Review and Governing Principles

¶17     We review a circuit court's decision granting or denying summary judgment independently, applying the same methodology as the circuit court. *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶14, 281 Wis. 2d 448, 699 N.W.2d 54. On summary judgment, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2021-22).[6]   "The purpose of the summary judgment procedure is not to try issues of fact but to avoid trials where there is nothing to try." *Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981).  "When confronted with cross-motions for summary judgment, the reviewing court must rule on each party's motion on an individual basis." *American Trucking Ass'ns, Inc. v. State*, 205 Wis. 2d 494, 499 n.4, 556 N.W.2d 761 (Ct. App. 1996).

¶18     In this case, the parties agree that S&L's breach of contract claim and Kwik Trip's declaratory judgment counterclaim turn on the same legal issue: whether S&L's exercise of its right of first refusal on September 1 was timely. The resolution of this issue hinges on whether the Bennetts' June 25 delivery or July 27 delivery satisfied the notice requirements of the ROFR Agreement, which

---

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

requires us to interpret the terms of the ROFR Agreement. The interpretation of the ROFR Agreement presents a question of law that we determine independently of the circuit court. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586.

¶19 "A right of first refusal is a contractual right to be first in line should the opportunity to purchase or lease a property arise." *Country Visions Coop. v. Archer-Daniels-Midland Co.*, 2021 WI 35, ¶2, 396 Wis. 2d 470, 958 N.W.2d 511 (citation omitted). Like any other contract, the parties to a right of first refusal contract set the terms of the contract. *Id.*, ¶23 n.10. We interpret the language of a right of first refusal contract as we do any other contract language. *MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 2015 WI 49, ¶23, 362 Wis. 2d 258, 864 N.W.2d 83.

¶20 When interpreting a right of first refusal contract, our task is to "best fulfill[] the intentions of the parties when they entered into the agreement granting … the right of first refusal." *Wilber Lime Prods., Inc. v. Ahrndt*, 2003 WI App 259, ¶13, 268 Wis. 2d 650, 673 N.W.2d 339. "We ascertain the parties' intentions by looking to the language of the contract itself." *Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426; *see also Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 ("[T]he best indication of the parties' intent is the language of the contract itself, for that is the language the parties 'saw fit to use.'" (citations omitted)). We give contract language its "ordinary meaning," consistent with what a reasonable person would understand the words to mean under the circumstances. *State ex rel. Massman v. City of Prescott*, 2020 WI App 3, ¶14, 390 Wis. 2d 378, 938 N.W.2d 602 (2019). Where the terms of a contract are "clear and unambiguous," we construe the contract "according to its literal terms"

without resort to extrinsic evidence. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶23, 326 Wis. 2d 300, 786 N.W.2d 15 (citation omitted); *see also Milwaukee Police Supervisors' Org. v. City of Milwaukee*, 2012 WI App 59, ¶12, 341 Wis. 2d 361, 815 N.W.2d 391 ("Unless the contractual language is ambiguous, the contract must be enforced as written.").

¶21 Here, none of the parties argue that the pertinent terms of the ROFR Agreement are ambiguous. We agree. We therefore interpret the ROFR Agreement according to its literal terms without resorting to extrinsic evidence of the contracting parties' intent. *See Maryland Arms*, 326 Wis. 2d 300, ¶23.

## II. June 25 Delivery

¶22 S&L argues that the June 25 delivery did not constitute proper notice of Kwik Trip's offer to purchase under the ROFR Agreement because it was missing Exhibit A. As we now explain, we agree.[7]

¶23 As noted, the ROFR Agreement provides that the 30-day period for S&L to exercise its right of first refusal is triggered when the Bennetts give S&L "written notice" of an offer to purchase that the Bennetts are willing to accept, which "shall include a copy of the Offer." The plain and ordinary meaning of this language is that, when the Bennetts give S&L written notice of an offer to purchase, they must also give S&L a complete copy of the offer. Allowing the Bennetts to provide anything less than a complete copy of an offer could hinder

---

[7] S&L also argues that the June 25 delivery was not proper notice because it was missing the executed signature pages of Kwik Trip's offer to purchase. We do not address this argument because our conclusion regarding the absence of Exhibit A in the June 25 delivery is dispositive. *See Barrows*, 352 Wis. 2d 436, ¶9.

11

S&L's ability to meaningfully assess whether to exercise its right of first refusal and purchase the Property "on the same terms" as the offer. As the Idaho Supreme Court has explained in a persuasive opinion, "the holder of … a right of first refusal cannot be called upon to exercise or lose that right unless the *entire* offer is communicated to [the holder] in such a form as to enable [the holder] to evaluate it and make a decision." *Gyurkey v. Babler*, 651 P.2d 928, 931 (Idaho 1982).

¶24 Here, the Bennetts' June 25 delivery did not include the complete offer to purchase because it was missing Exhibit A. The copy of the offer delivered to S&L on June 25 described the property that Kwik Trip sought to purchase as "certain property located at [address and parcel number], plus that part of vacated Bennett Drive, as generally described and depicted on attached Exhibit A." Exhibit A was a necessary component of Kwik Trip's offer to purchase because it was explicitly referenced in the terms of the offer as a description of the property that Kwik Trip sought to purchase. By omitting this attachment, the Bennetts deprived S&L of material information that S&L needed to meaningfully assess whether to purchase the Property on the same terms as Kwik Trip's offer to purchase. *See id.* at 932 ("Since the … offer did not contain all the terms and conditions that were contained in the final agreement between the respondents, it is clear that the appellant's right to receive notice of all the terms and conditions of the offer … was not satisfied."). Because the ROFR Agreement required that the Grantor Notice include a copy of the offer, but the copy of the offer included in the June 25 delivery did not include the complete offer, we conclude that the June 25 delivery was not sufficient notice to S&L of Kwik Trip's offer to purchase.

¶25 Respondents do not dispute that Exhibit A was a part of Kwik Trip's offer to purchase. Rather, Respondents argue that the June 25 delivery was proper

notice without Exhibit A. We reject Respondents' arguments for the following reasons.

¶26     First, Respondents argue that the June 25 delivery constituted proper notice without Exhibit A because the document given to S&L contained a "lengthy, detailed description of the Property." We are not persuaded. As explained above, Exhibit A was part of the offer and, by not including Exhibit A, the June 25 delivery did not include a complete "copy of the offer" as required in the ROFR Agreement. In addition, as noted above, the document delivered to S&L on June 25 stated that Kwik Trip offered to purchase "certain property" located at a particular address and parcel number and that this property was "generally described and depicted" in Exhibit A. Based on this description in the copy of the offer delivered by the Bennetts, it was not clear whether Kwik Trip offered to purchase the entire Property or merely a portion of the Property, as S&L was entitled to notice under both scenarios. Because the copy of the offer provided did not identify the portion of the Property that Kwik Trip offered to purchase, it was also not clear whether Kwik Trip's offer would affect S&L's easement rights on the Property or otherwise affect the Culver's lot. Moreover, this description of the Property did not clarify whether Exhibit A contained additional terms that were not mentioned in the document delivered by the Bennetts. Without knowing what information was contained in Exhibit A, S&L could not reasonably and fully discern the terms of Kwik Trip's offer. Because the document delivered on June 25 without Exhibit A did not constitute a complete copy of the offer, it was not proper notice under the ROFR Agreement.

¶27     Second, Respondents argue that Exhibit A was not necessary for proper notice because S&L was already aware that Kwik Trip offered to purchase the entire Property. In support, Respondents assert that Kwik Trip had previously

sent S&L "detailed site plans" as recently as May 21, 2021, that showed Kwik Trip's intent to purchase the entire Property. This argument fails because the parties agreed that S&L's right of first refusal would only be triggered if the Bennetts gave S&L written notice of an offer to purchase that included a copy of the offer. S&L's purported knowledge of the terms of the offer prior to receiving the actual offer had no bearing on whether this contractual condition was satisfied. Moreover, the terms of the offer could have changed in the month between Kwik Trip giving S&L the "detailed site plans" and the June 25 delivery.

¶28 In sum, the undisputed facts establish that the Bennetts did not provide S&L with a complete written copy of Kwik Trip's offer to purchase the Property as part of the June 25 delivery. Therefore, the June 25 delivery was not proper notice and did not trigger the 30-day period for S&L to exercise its right of first refusal.

### III. July 27 Delivery

¶29 S&L argues that the July 27 delivery of Exhibit A did not cure the deficient June 25 delivery because the Bennetts did not give Exhibit A to Liegel and Latta as required under the ROFR Agreement. As we now explain, we agree.[8]

¶30 The ROFR Agreement provides that, when notice is required to be given to S&L, such notice must be given to both S&L's manager, Jeffrey Liegel, and S&L's attorney, Richard Latta. Here, the Bennetts complied with this

---

[8] S&L also argues that the July 27 delivery was insufficient because the Bennetts only gave S&L the portions of Kwik Trip's offer to purchase that were missing from the June 25 delivery, not a complete copy of the entire offer. We do not address this argument because our conclusion regarding the Bennetts' failure to deliver Exhibit A to Liegel and Latta is dispositive. *See* **Barrows**, 352 Wis. 2d 436, ¶9.

requirement for the June 25 delivery when they delivered the copy of the offer without Exhibit A to Liegel and Latta. However, when S&L asked the Bennetts to provide a copy of the offer that included Exhibit A, the Bennetts did not deliver Exhibit A to Liegel and Latta. Instead, the Bennetts responded to S&L's request by giving a copy of Exhibit A to Stevenson. Regardless of whether the Bennetts' piecemeal delivery of Kwik Trip's offer satisfied the ROFR Agreement's notice requirements, the Bennetts' delivery of Exhibit A to Stevenson did not satisfy the unambiguous requirement that the Bennetts give Exhibit A—a necessary component of Kwik Trip's complete copy of the offer to purchase—to Liegel and Latta. Thus, the July 27 delivery was not sufficient notice under the Agreement, even when considered with the incomplete copy of the offer provided in the June 25 delivery, because neither delivery provided Exhibit A to Liegel and Latta.

¶31 Respondents do not dispute that the ROFR Agreement requires that written notice of Kwik Trip's offer to purchase and a copy of that offer be given to Liegel and Latta.[9] Nonetheless, Respondents argue that the July 27 delivery to Stevenson was proper for multiple reasons. We reject each of Respondents' arguments as follows.

¶32 Respondents argue that the July 27 delivery to Stevenson was proper because Stevenson was the representative of S&L who asked the Bennetts to provide the missing Exhibit A. This argument fails because, as explained above, there is no dispute that the ROFR Agreement requires the Bennetts to provide to Liegel and Latta a copy of the offer to purchase in order to trigger S&L's right of

---

[9] In fact, Respondents affirmatively stated in their summary judgment materials in the circuit court that the ROFR Agreement requires that notice of an offer to purchase be given to both Liegel and Latta. Respondents do not deviate from that position on appeal.

first refusal. The Bennetts were not entitled to ignore this unambiguous contractual obligation simply because a representative of S&L who is not a designated notice party under the ROFR Agreement asked the Bennetts to cure their deficient June 25 delivery.

¶33 Respondents also argue that the Bennetts' delivery of Exhibit A to Stevenson on July 27 was proper notice because S&L accepted the August 31 delivery to Stevenson as satisfying the ROFR Agreement's notice requirements. However, Respondents do not cite to any legal authority to support their argument that S&L's acceptance of the August 31 delivery excused the Bennetts' noncompliance with the notice requirements in the ROFR Agreement for the July 27 delivery. We may decline to address this argument for this reason. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address arguments that are undeveloped, including the lack of references to supporting legal authority). But this argument also fails on the merits because Respondents have not shown that S&L waived the notice requirements for the July 27 delivery.

¶34 "[T]he general rule is that a party to a contract can waive a condition that is for [its] benefit." *Godfrey Co. v. Crawford*, 23 Wis. 2d 44, 49, 126 N.W.2d 495 (1964). "The party asserting the existence of facts that give rise to a waiver has the burden of proving them." *Christensen v. Equity Coop. Livestock Sale Ass'n*, 134 Wis. 2d 300, 303, 396 N.W.2d 762 (Ct. App. 1986). Here, Respondents do not point to any evidence that S&L intended to waive the required notice to Liegel and Latta for the July 27 delivery. Nor do Respondents point to any legal authority or otherwise explain why S&L's waiver of the notice requirements for the August 31 delivery operates as a waiver of the Bennetts' noncompliance with those requirements on previous occasions. Accordingly, we

conclude that Respondents have not shown that S&L's acceptance of the August 31 delivery to Stevenson excused the Bennetts' noncompliance with the notice requirements for the July 27 delivery.

¶35    Respondents further argue that the July 27 delivery to Stevenson, coupled with the June 25 delivery, was proper notice because it gave S&L "reasonable notice" of all of the terms of Kwik Trip's offer to purchase.   In support, Respondents point to Wisconsin case law that "notice" is generally sufficient if it reasonably apprises the recipient of a fact.  *See Illinois Cent. R.R. Co. v. Blaha*, 3 Wis. 2d 638, 646, 89 N.W.2d 197 (1958) ("[W]hatever fairly puts a person on inquiry with respect to an existing fact is sufficient notice of that fact if the means of knowledge are at hand."); *Black v. Chicago & N.W. Ry. Co.*, 18 Wis. 208, 209 (1864) ("The general rule in respect to notices is[] that mere informalities do not vitiate them so long as they do not mislead[] and the notice gives the necessary information to the proper party.").   Respondents also point to cases from other jurisdictions that hold that a right of first refusal requires only "reasonable" notice or disclosure of the terms of the sale.  *See, e.g.*, *Dyrdal v. Golden Nuggets, Inc.*, 689 N.W.2d 779, 784-85 (Minn. 2004); *John D. Stump & Assocs., Inc. v. Cunningham Mem'l Park, Inc.*, 419 S.E.2d 699, 705-06 (W. Va. 1992).

¶36    This argument fails because none of the cases Respondents cite involve contracts containing specific notice requirements.  *See Illinois Cent. R.R.*, 3 Wis. 2d at 640-41; *Black*, 18 Wis. at 208; *Dyrdal*, 689 N.W.2d at 784 ("reasonable notice" is required only if there is no "express agreement between the parties regarding the nature of notice activating a right of first refusal and its sufficiency"); *John D. Stump*, 419 S.E.2d at 706 (limiting the rule of "reasonable notice" to "cases where there is no specific language in the agreement granting the

17

right of first refusal spelling out what must be contained in the notice."). Here, by contrast, the ROFR Agreement requires more than "reasonable notice" to S&L of an offer to purchase. The parties agree that the ROFR Agreement specifically and unambiguously requires the Bennetts to provide written notice of the offer, as well as a copy of the offer, to both Liegel and Latta at their separate addresses. *See Hotel Hay Corp. v. Milner Hotels*, 255 Wis. 482, 486, 39 N.W.2d 363 (1949) ("The nature of notice required by contract depends, of course, upon the provisions of the contract."). Like any other contract, we must interpret this unambiguous language according to its literal terms. *See Maryland Arms*, 326 Wis. 2d 300, ¶23. There is no dispute that the Bennetts did not deliver Exhibit A to Latta or Liegel in either the June 25 delivery or in the July 27 delivery. As a result, the Bennetts' failure to deliver Exhibit A to Liegel and Latta means that the July 27 delivery, even when considered together with the portion of the offer provided in the June 25 delivery, was not sufficient notice under the terms of the ROFR Agreement.

¶37 Finally, Respondents argue that the July 27 delivery was proper notice because the Bennetts substantially performed their contractual obligations. In other words, Respondents allege that the June 25 delivery and the July 27 delivery collectively provided S&L with all of the terms of Kwik Trip's offer to purchase. Under Wisconsin law, "substantial performance" of a contractual obligation "means not doing the exact thing promised, but doing something else that is just as good, or good enough for both obligor and obligee." *Bridgkort Racquet Club, Inc. v. University Bank*, 85 Wis. 2d 706, 709, 271 N.W.2d 165 (Ct. App. 1978). "The test for substantial performance is whether the performance meets the essential purpose of the contract." *Micro-Managers, Inc. v. Gregory*, 147 Wis. 2d 500, 516, 434 N.W.2d 97 (Ct. App. 1988). Factors that courts

18

consider in determining whether a party substantially performed the party's contractual obligations include "the character of the promised performance, the purposes it was expected to serve and the extent to which nonperformance has defeated those purposes." *M & I Marshall & Ilsley Bank v. Pump*, 88 Wis. 2d 323, 333, 276 N.W.2d 295 (1979). What constitutes "substantial performance" in a given case "is always a question of fact, a matter of degree, a question that must be determined relatively to all the other complex factors that exist in every instance." *Wm. G. Tannhaeuser Co. v. Holiday House, Inc.*, 1 Wis. 2d 370, 374, 83 N.W.2d 880 (1957) (emphasis omitted).

¶38     Here, Respondents argue that the July 27 delivery to Stevenson was "substantial performance" of the ROFR Agreement's notice requirement because it provided S&L with "actual notice" of Kwik Trip's offer to purchase. We are not persuaded. As explained above, the only reasonable interpretation of the notice provision of the ROFR Agreement is that the Bennetts must provide written notice to two specific individuals, Liegel and Latta, each with different responsibilities and at different addresses. Failure to substantially perform this obligation with respect to either of these individuals constitutes improper notice under the ROFR Agreement. Here, the July 27 delivery did not substantially perform the required notice to Latta. As explained above, Latta is S&L's attorney who represents S&L in matters concerning the ROFR Agreement. S&L bargained for the right to have Latta be provided with a copy of any offer to purchase the Property, yet there is no dispute that Latta did not receive Exhibit A—a necessary component of Kwik Trip's offer to purchase—in either the June 25 or July 27 deliveries. Respondents do not point to any facts in the record to support their argument that providing notice to S&L's manager (Stevenson) was "just as good" as providing notice to S&L's attorney (Latta), *see* *Bridgkort*, 85 Wis. 2d at 709, or that notice to

Stevenson comported with the "essential purpose" of the unambiguous contractual requirement that notice be provided to Latta, *see **Micro-Managers***, 147 Wis. 2d at 516.[10]  Therefore, we conclude that the July 27 delivery did not substantially perform the required notice to Latta.[11]

¶38    In sum, we conclude that the undisputed facts establish that neither the June 25 delivery nor the July 27 delivery, considered separately and cumulatively, provided proper notice to S&L of Kwik Trip's offer to purchase the Property.  Because the parties do not dispute that the August 31 delivery constituted proper notice under the ROFR Agreement, and because S&L exercised its right of first refusal within 30 days of that notice, S&L is entitled to purchase the Property on the same terms as Kwik Trip's offer.

## CONCLUSION

¶40    For the reasons stated, we conclude that, as a matter of law, S&L's exercise of its right of first refusal for the Property on September 1 was timely and that S&L is therefore entitled to summary judgment on its breach of contract claim.

*By the Court.—Order reversed.*

---

[10]  Respondents point to an email sent by Stevenson to Kwik Trip and Liegel on August 6 that says:  "Mark Bennett did drop off what we needed."  However, Respondents do not explain how this email to Liegel substantially performed the required notice to Latta.  Respondents also contend that "actual notice" to S&L is all that is required because the "purpose of the ROFR Agreement was to provide notice to S&L of a prospective sale to a third-party."  We will not consider this factual assertion because Respondents do not support this assertion with any citation to the record.  *See **Tam v. Luk***, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990) (this court may decline to consider factual assertions that are unsupported by citations to the record).

[11]  Because the lack of notice to Latta is dispositive, we express no opinion as to whether the July 27 delivery substantially complied with the required notice to Liegel.

Not recommended for publication in the official reports.